CROWN LIFE INSURANCE
COMPANY, Petitioner,

v.

William E. CASTEEL, Respondent.

No. 98–0218.

Supreme Court of Texas.

Argued Nov. 19, 1998.

Decided Jan. 27, 2000.

---

1. *See* GARLAND CITY CHARTER, Art. IV §§ 21(a) & 22.

recovery for Deceptive Trade Practices Act violations; and (3) whether the inclusion of invalid theories of liability submitted to the jury in a single broad-form question constitutes harmful error.

We hold that Casteel does have standing to sue Crown under Article 21.21; but Casteel does not have standing under Article 21.21 to allege DTPA-based claims that require consumer status by their terms. We also hold that submitting invalid theories of liability in a single broad-form jury question is harmful error when it cannot be determined whether the jury based its verdict on one or more of the invalid theories. We affirm in part, reverse and render judgment in part, vacate in part, and reverse and remand in part the judgment of the court of appeals.

G. Alan Waldrop, Austin, John L. Hill, Jr., Houston, Edwin R. DeYoung, Austin, Roger B. Cowie, Dallas, Barbara M. Ellis, Austin, for Petitioner.

Kent Hance, Gary F. DeShazo, Jerome J. Schiefelbein, Terry Scarborough, Cyndy Olson Bourland, Austin, for Respondent.

Justice ABBOTT delivered the opinion for a unanimous Court.

We overrule Casteel's Motion for Rehearing and grant in part Crown Life's Motion for Rehearing. We withdraw our opinion dated July 1, 1999, and substitute the following.

William E. Casteel sold insurance policies as an independent agent of Crown Life Insurance Company. One of the policies sold by Casteel led to a lawsuit by policyholders against Casteel and Crown. In that lawsuit, Casteel filed a cross-claim against Crown. In this appeal from that lawsuit, we consider several issues: (1) whether Casteel, who alleges that he has been injured by the unfair and deceptive practices of Crown, has standing to sue Crown under Article 21.21 of the Texas Insurance Code; (2) whether that standing extends to Article 21.21 claims that allow

## I

Between 1986 and 1989, Casteel sold Modified Vanishing Premium ("MVP") policies as an agent for Crown. The MVP policies provided that substantial premiums be paid over a short period of time, after which the premiums would "vanish" and the policy would carry itself through fruition by the reinvestment of policy dividends. Crown provided Casteel with information about how the policies worked, and Casteel provided biographical information on prospective clients to Crown. Crown then produced illustrations tailored to the proposed insureds, which Casteel presented as part of his sales packages. Many of Casteel's clients who purchased MVP policies were friends from his church.

Casteel's clients began complaining about the MVP policies in 1990. The premiums had not vanished as Casteel had represented and, in some cases, never would. In the case of Randall and Sandra Ferguson, Casteel sold an MVP policy that would pay $5,000,000 to the survivor in the event that one of them died. Based on Crown's projections, Casteel had initially informed them that the premiums would

total approximately $91,520 before vanishing, but the Fergusons later discovered that the premiums would never vanish and could total as much as $800,000. The Fergusons sued Casteel and Crown alleging DTPA, Article 21.21, and common-law causes of action.

Casteel filed a cross-claim against Crown alleging violations of Article 21.21, which included claims based on DTPA provisions incorporated in Article 21.21. Casteel also brought common-law claims for negligence, gross negligence, breach of fiduciary duty, breach of a duty of good faith and fair dealing, fraud, and constructive fraud. Crown moved for summary judgment on Casteel's claims, and the trial court granted partial summary judgment in Crown's favor on the common-law causes of action. Casteel's Article 21.21 claims, including those based on the DTPA, proceeded to trial with the Fergusons' claims.

With regard to the Fergusons' claims, the jury found that both Crown and Casteel had engaged in unfair or deceptive acts or practices that were a producing cause of damages to the Fergusons. The jury found that Crown had committed the alleged wrongful acts knowingly and was ninety-nine percent responsible for the Fergusons' damages, while Casteel, who was found not to have acted knowingly, bore only one percent of the responsibility. On Casteel's claims against Crown, the jury found that Crown had knowingly engaged in false, misleading, unfair, or deceptive acts or practices that were a producing cause of damages to Casteel. The jury awarded Casteel $400,000 for past lost income, $1,000,000 for future lost income, $6,000,000 for past mental anguish, and $100,000 for future mental anguish. Additionally, the jury awarded Casteel attorney's fees in the amount of forty percent of his recovery.

Following trial, Crown and the Fergusons settled. Under the settlement terms, the Fergusons assigned their rights against Casteel to Crown, so that Crown now stands in place of the Fergusons for purposes of this appeal. Crown moved for judgment notwithstanding the verdict on Casteel's claims. The trial court rendered judgment that Casteel take nothing against Crown, holding that Casteel was neither a "person" as defined under Article 21.21, nor a "consumer" under the DTPA, and therefore lacked standing to bring suit under those statutes. The court dismissed the Fergusons' claims against Crown with prejudice due to their settlement. The court rendered judgment on the verdict with respect to the Fergusons' claims against Casteel, holding Casteel individually liable for the Fergusons' actual damages, attorney's fees, and prejudgment interest in the amount of $1,366,983.

The court of appeals held that Casteel was a "person" with standing to sue Crown under Article 21.21, but that Casteel did not have standing to sue under the incorporated DTPA provisions because he was not a "consumer." 3 S.W.3d 582, 593. The court of appeals reversed and rendered judgment in favor of Casteel in the amount of $1,400,000 for lost past and future income. *Id.* at 597. The court held, however, that Casteel was not entitled to the $6,100,000 in mental anguish damages awarded by the jury because there was legally insufficient evidence to support the award. *Id.* at 597. In addition, the court remanded the case to the trial court for further proceedings on the issues of settlement credit application, calculation of prejudgment interest, and attorney's fees. *Id.* at 597. The rest of the judgment, including partial summary judgment in favor of Crown on Casteel's common-law claims, was affirmed. *Id.* at 597.

## II

Crown initially challenges Casteel's recovery under Article 21.21 of the Insurance Code. At the time that Casteel's claims against Crown arose, Article 21.21, section 16(a) provided:

Any person who has sustained actual damages as a result of another's engag-

ing in an act or practice declared in Section 4 of this Article ... to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices.

Act of Mar. 19, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex. Gen. Laws 395, 395, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 13, 1995 Tex. Gen. Laws 2988, 3000 (current version at Tex. Ins.Code art. 21.21, § 16(a)). Thus, to assert a cause of action under Article 21.21, Casteel must be (1) a "person," as defined by Article 21.21, section 2(a), and (2) injured by another's acts or practices declared to be unfair or deceptive by either (a) Article 21.21, section 4, or (b) DTPA section 17.46. *Id.; see Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 147 (Tex.1994). Casteel alleged that he was injured by Crown's "unfair or deceptive acts or practices" defined by Article 21.21, section 4, and by certain deceptive trade practices prohibited by DTPA section 17.46(b), as those claims are incorporated within Article 21.21. We must initially determine whether Casteel, as an insurance agent, is a "person" with standing to sue Crown under Article 21.21. Additionally, we consider whether Casteel must also be a "consumer" to have standing to recover under Article 21.21 for incorporated DTPA violations.

### A. Standing for Claims Arising under Article 21.21

■ Crown challenges the court of appeals' holding that Casteel, as Crown's agent, is a "person" with standing to sue under Article 21.21, section 16(a). Crown argues that the court of appeals erred by relying too heavily on the plain language of Article 21.21 and too little on the Insurance Code's purpose. Crown acknowledges that the statute's plain language grants a cause of action to "any person" injured by another's deceptive acts or practices in the business of insurance, and that "person" is defined broadly as *"any individual,* corporation, association, partnership, ... and any other legal entity engaged in the business of insurance, *including agents,* brokers, adjusters and life insurance counselors." Tex. Ins.Code art. 21.21, § 2(a) (emphasis added). Despite this language, Crown argues that standing is limited to "persons relying on sales practices when buying policies, and the insureds and beneficiaries under those policies—not the agents selling policies." This, Crown asserts, is because Article 21.21 has two specific, discrete purposes: (1) to protect insurance companies and their agents from "unfair methods of competition," and (2) to protect the public from "unfair or deceptive acts or practices." Crown argues that "agents" were included in the section 2(a) definition of "person" only to provide them a cause of action under section 16(a) for "unfair methods of competition," but not for other "unfair and deceptive acts or practices," such as alleged by Casteel. *See* Tex. Ins.Code art. 21.21, § 16(a).

■ The primary rule in statutory interpretation is that a court must give effect to legislative intent. Tex. Gov't Code § 312.005; *see also Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex. 1994). When determining legislative intent, we look to the language of the statute, as well as its legislative history, the objective sought, and the consequences that would flow from alternate constructions. *See Union Bankers,* 889 S.W.2d at 280. The Legislature explicitly declared its intent in passing Article 21.21:

The purpose of this Act is to regulate trade practices in the business of insurance ... by defining, or providing for the determination of, *all* such practices in this state which constitute unfair methods of competition or *unfair or deceptive acts or practices* and by prohibit-

ing the trade practices so defined or determined.

Act of Mar. 19, 1985, 69th Leg., R.S., ch. 22, § 1, 1985 Tex. Gen. Laws 395, 395, *amended by* Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 20.17, 1993 Tex. Gen. Laws 2559, 2704 (current version at TEX. INS. CODE art. 21.21, § 1(a)) (emphasis added). The Legislature further admonished that Article 21.21 "shall be liberally construed and applied to promote its underlying purposes." *Id.* (current version at TEX. INS. CODE art. 21.21, § 1(b)).

We do not glean from this stated purpose, nor any other language in the statute, a legislative intent to protect agents only from unfair competition. Rather, it is consistent with the Legislature's express objective to regulate *all* insurance trade practices to conclude that an insurance agent is a "person" with standing to sue an insurance company when the agent is damaged by company practices that violate Article 21.21. Crown's construction would allow an insurer to deceive its agent with impunity, despite knowing that the misinformation would eventually reach the public. The legislative intent does not support Crown's position.

Crown also argues that the court of appeals' holding conflicts with *Allstate Insurance Co. v. Watson,* 876 S.W.2d 145 (Tex.1994). In *Watson,* the plaintiff was injured in a car accident with Allstate's insured and sued Allstate under Article 21.21, section 16 for failing to attempt in good faith to effectuate a prompt settlement of her claims, although the insured's liability had been reasonably established. *Id.* at 146. We denied standing because allowing third-party claimants standing to sue an insurer for unfair claims settlement practices would directly conflict with the well-established duties insurers owe their insureds. *See id.* at 150; *see also Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 136 (Tex.1988). Among these duties, an insurer must defend its insured *against* the claims asserted by a third party. *Watson,* 876 S.W.2d at 150. But the claimant in *Watson* asked us to extend these same duties to a party *adverse* to the insured. *Id.* at 147. Allowing third parties a direct cause of action, we determined, would create situations in which an insurer would be exposed to potential liability by these conflicting duties. *Id.* at 150. No such conflict arises by granting Casteel standing despite his status as Crown's agent. Rather, in this case the duty owed by the insurer to the insured is in harmony with the duty owed to the agent not to misrepresent insurance policy terms. The goal of comprehensively regulating insurance practices is furthered by giving Casteel standing because it strengthens the insurer's incentive to avoid passing misleading information to the public through its agent.[1] Thus, the rationale behind *Watson* does not apply to Casteel's claims.

Crown also argues that the court of appeals' holding conflicts with *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482 (Tex.1998). In *Garrison,* we held that, because an employee-agent of an insurance company is a "person" under Article 21.21, section 2(a), the agent may be sued individually under the Insurance Code for deceptive acts or practices, despite acting within the scope of employment. *Id.* at 487. Crown asserts that *Garrison* requires us to look beyond the "plain and common meaning" of Article 21.21, section 2(a)'s definition of "person" to the intent and purpose of the

---

1. One year after *Watson,* the Legislature amended Article 21.21, section 4 to prohibit unfair settlement practices against insureds and beneficiaries. Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 11, sec. 4(10), 1995 Tex. Gen. Laws 2988, 2999. The Legislature codified the holding of *Watson* by providing that the amended clause did not create a direct cause of action against an insurance carrier by third parties whose claims were based on the liability of insureds. *Id.; see* TEX. INS.CODE art. 21.21, § 4(10)(b). Notably, the Legislature did not narrow section 2's definition of "person," nor the scope of standing created by section 16.

statute. We agree that we must consider the statute's purpose and intent, but contrary to Crown's interpretation of *Garrison*, a close reading of that case actually supports Casteel's claim for Article 21.21 standing. In concluding that "person" includes an insurer's employees, we declined to artificially limit the statute's definition of "person" because that would be "contrary to the Legislature's intent to comprehensively regulate and prohibit deceptive insurance practices."[2] *Id.* at 485–87, 486. The same policy focus on comprehensive regulation that supports holding agents liable for deceptive insurance practices also supports holding that agents are "persons" who can sue insurers for acts prohibited by Article 21.21.

Crown next argues that Casteel cannot claim that he and Crown are, respectively, the "person" harmed and "another" who caused harm under section 16(a) because, under common-law agency principles, Casteel, as Crown's agent, *was* Crown for purposes of the transaction at issue. Therefore, Crown urges, because Casteel cannot claim to be both Crown and someone other than Crown, Casteel does not have standing to sue Crown. We disagree.

Crown's own contract with Casteel limits the application of common-law agency principles. Under their contract, Casteel is stripped of "any power to bind the Company by making any promise, interpretation or representation." Furthermore, the Insurance Code itself modifies the common law when necessary to serve the Code's purposes. For example, the Code specifically limits the power of an agent to bind a company to the terms of a policy. *See* Tex. Ins.Code arts. 21.02, 21.04. In addition, section 2(a) defines "person[s]" with standing to specifically include "agents, brokers, adjusters and life insurance counselors," Tex. Ins.Code art. 21.21, § 2(a), all of whom may act as the common-law agents of insurance companies. This definition contains no exception limiting its application when common-law principles conflict with the Code.

Moreover, we have acknowledged the Code's modification of common-law agency principles by holding that an agent may be personally liable under Article 21.21 for deceptive acts, notwithstanding the fact that he acted within the scope of his employment. *See Garrison*, 966 S.W.2d at 485. This departure from the common law serves the Legislature's purpose of comprehensively regulating and prohibiting deceptive insurance practices. *See id.* at 486. Crown's position defeats this purpose, because under that position no insurance company would be liable to its agent, even for direct misrepresentations, despite the agent's personal liability to consumers to whom he unwittingly passes misinformation. Common-law agency principles do not undermine the clear intent and language of the Insurance Code.

In sum, we hold that an insurance agent is a "person," as defined under Article 21.21, section 2(a), for purposes of determining standing under Article 21.21, section 16(a). Thus, when an agent meets the other required elements for a cause of action under Article 21.21, section 16(a)— sustaining actual damages caused by another's engaging in an act or practice declared unfair or deceptive—the agent has standing to bring that claim. This result is required by both the plain language of the statute and its legislative intent.

### B. Standing under Article 21.21 for Incorporated DTPA–Based Claims

Casteel challenges the court of appeals' decision denying him standing to sue Crown under Article 21.21 for DTPA-based violations because he is not a consumer. Article 21.21, section 16(a) incorporates part of the DTPA by providing a

---

**2.** We also noted that an independent agent, such as Casteel, was subject to suit under Article 21.21, section 16. *Id.* at 485.

cause of action for "unlawful deceptive trade practice[s]" defined under DTPA section 17.46. TEX. INS.CODE art. 21.21, § 16(a); *see* TEX. BUS. & COM.CODE § 17.46(b) (laundry list of specific acts declared to be unlawful trade practices). Only a "consumer" can maintain a cause of action directly under the DTPA. TEX. BUS. & COM.CODE § 17.50(a); *see Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex.1987). A "consumer" is defined as one "who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM.CODE § 17.45(4). Although Casteel admits that he is not a consumer, he argues that consumer status is not required of him because his DTPA-based causes of action arise through Article 21.21, not the DTPA itself. Casteel concedes, however, that he may not have standing when a subsection of DTPA section 17.46(b) expressly requires consumer status.

■ While Article 21.21 incorporates the DTPA laundry list of deceptive acts, it does not incorporate the entire DTPA. TEX. INS.CODE art. 21.21, § 16(a); *see Aetna Cas. & Sur. Co. v. Marshall*, 724 S.W.2d 770, 772 (Tex.1987). Among those DTPA provisions not incorporated into Article 21.21 is the consumer standing requirement of DTPA section 17.50. *See Aetna*, 724 S.W.2d at 772; *see also* TEX. BUS. & COM.CODE § 17.50(a) (consumer-standing requirement). Thus, we have held that consumer status is not specifically required to bring a DTPA-based cause of action under Article 21.21. *See Aetna*, 724 S.W.2d at 772. But if the terms of a subsection of DTPA section 17.46(b) require consumer status, then consumer status is required to bring an action under Article 21.21 for its violation. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 273–74 (Tex.1995); *Webb v. International Trucking Co.*, 909 S.W.2d 220, 227 (Tex. App.—San Antonio 1995, no writ).

■ As part of his Article 21.21 claim, Casteel alleged that Crown violated DTPA sections 17.46(b)(5), (7), (9), (12), and (23). In *Faircloth*, we stated that DTPA section 17.46(b)(23), as incorporated in Article 21.21, requires consumer status. *Faircloth*, 898 S.W.2d at 274. DTPA section 17.46(b)(23) creates a cause of action for "the failure to disclose information concerning *goods or services* . . . intended to induce the *consumer* into a transaction." TEX. BUS. & COM.CODE § 17.46(b)(23) (emphasis added). We held that DTPA section 17.46(b)(23) requires consumer status by its terms because it explicitly arises out of a "consumer" transaction, and because it creates a cause of action for the failure to disclose information concerning "goods or services." *See Faircloth*, 898 S.W.2d at 273. We stated that "goods" and "services," as defined under the DTPA, must be "purchased or leased for use" by the party seeking to state a cause of action. *Id.* at 274. For example, although the plaintiff in *Faircloth* brought suit to recover on a policy to which she was not a party (the policy being a "good or service" to the insured), we held that third parties negotiating a policy settlement "do not seek to purchase or lease any of the services of the insurer." *Id.* Because the policy was not a "good or service" to the nonconsumer plaintiff, she did not have standing. Applying *Faircloth*'s reasoning to all DTPA claims based on Article 21.21, Casteel must be a consumer to state a cause of action under Article 21.21 for the violation of a DTPA subsection if the subsection either (1) specifically involves a consumer transaction, or (2) involves the misrepresentation of "goods or services" acquired by the plaintiff. *Id.* at 273–74; *see Webb*, 909 S.W.2d at 228 (rejecting nonconsumer's Article 21.21 claim for violation of DTPA section 17.46(b)(5) because plaintiff did not acquire "goods or services").

■ Accordingly, Casteel's Article 21.21 claims for violations of DTPA sections

17.46(b)(5),[3] 17.46(b)(7),[4] and 17.46(b)(9)[5] require consumer status because they too deal with the misrepresentation of "goods or services." TEX. BUS. & COM.CODE § 17.46(b)(5), (7), and (9). Casteel's claims arise from Crown's alleged misrepresentations of policy illustrations prepared by Crown and presented by Casteel to his clients. Casteel did not acquire or seek to acquire the policies; he was merely the conduit for information. Thus, the misinformation at issue does not concern "goods or services" purchased or leased by Casteel. Rather than goods or services, Crown's alleged misrepresentations to Casteel involve internal product information for Casteel's use in the sales of policies. We hold that because Casteel is not a consumer of Crown's goods and services, he cannot state a cause of action under Article 21.21 for the violation of DTPA subsections 17.46(b)(5), (7), (9), and (23), which, by their terms, require consumer status.

■ Lack of consumer status, however, does not bar Casteel from bringing a cause of action under Article 21.21 for Crown's violation of DTPA section 17.46(b)(12). Section 17.46(b)(12) makes it a violation to "represent[ ] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." *Id.* § 17.46(b)(12). When brought as a claim under Article 21.21, this subsection does not require consumer status because it neither arises out of a consumer transaction explicitly, nor deals with the misrepre-

sentation of "goods or services." *See Webb*, 909 S.W.2d at 228. We therefore reverse the court of appeals' judgment that Casteel cannot bring *any* DTPA-based Article 21.21 actions against Crown, and hold that Casteel is not required to be a consumer to bring an Article 21.21 claim for the violation of DTPA section 17.46(b)(12).

### III

■ Crown next challenges the court of appeals' conclusion that the erroneous submission of Casteel's DTPA-based Article 21.21 claims was harmless. The trial court submitted a single broad-form question on the issue of Crown's liability to Casteel. The question instructed the jury on thirteen independent grounds for liability, the first five of which were taken from the DTPA section 17.46(b) laundry list.[6] The question requested a single answer on Crown's liability, which the jury answered affirmatively.

■ Casteel contends that Crown waived any defect in the liability question by failing to preserve error at the trial court. In particular, Casteel argues that Crown's objection was not specific enough because Crown objected to the question generally, instead of to each subsection. We disagree. Crown preserved error by obtaining a ruling on its timely objection to the question on the ground that Casteel did not have standing to pursue any DTPA-based Article 21.21 claims because

---

3. "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have...."

4. "representing that goods or services are of a particular standard, quality, or grade ... if they are of another."

5. "advertising goods or services with intent not to sell them as advertised."

6. The question instructed the jury on DTPA-based Article 21.21 liability theories as follows:

Question 16(a), "Representing that the insurance policies had characteristics, uses, benefits and quantities which they did not have," tracks DTPA § 17.46(b)(5).

Question 16(b), "Representing that the insurance policies were of a particular standard, quality or grade if they were of another," tracks DTPA § 17.46(b)(7).

Question 16(c), "Advertising insurance policies with intent not to sell them as advertised," tracks DTPA § 17.46(b)(9).

Question 16(d), "Representing that agreements conferred or involved rights, remedies or obligations which they did not have or involve," tracks DTPA § 17.46(b)(12).

he was not a consumer. *See Religious of the Sacred Heart v. City of Houston,* 836 S.W.2d 606, 613–14 (Tex.1992).

The court of appeals concluded that the trial court erred by submitting the DTPA-based theories of liability because Casteel did not have standing to bring them. Nevertheless, the court held that this error was harmless because Crown did not "affirmatively demonstrate that the error probably caused rendition of an improper judgment." 3 S.W.3d at 594. We hold that it was error to submit four of the five DTPA-based theories of liability because Casteel was required to have consumer status to maintain an Article 21.21 cause of action under them. We now decide whether that error was harmful.

The court of appeals based its holding on the harmless error rule in former Texas Rule of Appellate Procedure 81(b)(1), which stated:

> No judgment shall be reversed on appeal and a new trial ordered [because of error] ... unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment....

TEX.R.APP. P. 81(b)(1) (repealed 1997).[7] In addition, the court cited four decisions from three other courts of appeals holding that the submission of an invalid theory of liability in a single broad-form question is harmless if any evidence supports a finding of liability on a valid theory. *See Provident Am. Ins. Co. v. Castaneda,* 914 S.W.2d 273, 277–78 (Tex.App.—El Paso 1996), *rev'd on other grounds,* 988 S.W.2d 189 (Tex.1998); *Hart v. Berko, Inc.,* 881 S.W.2d 502, 510–11 (Tex.App.—El Paso 1994, writ denied); *Bernstein v. Portland Sav. & Loan Ass'n,* 850 S.W.2d 694, 702 (Tex.App.—Corpus Christi 1993, writ de-

nied); *Ford Motor Co. v. Pool,* 688 S.W.2d 879, 882 (Tex.App.—Texarkana 1985), *aff'd in part and rev'd in part on other grounds,* 715 S.W.2d 629 (Tex.1986).

Notwithstanding that authority, the court of appeals erred by holding this error harmless. It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law. Yet, when a jury bases a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories, the appellate court is often unable to determine the effect of this error. The best the court can do is determine that some evidence *could* have supported the jury's conclusion on a legally valid theory. To hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant *should* be held liable on proper, legal grounds. *See* Muldrow & Underwood, *Application of the Harmless Error Standard to Errors in the Charge,* 48 BAYLOR L. REV. 815, 838–40 (1996); Dorsaneo, *Broad–Form Submission of Jury Questions and the Standard of Review,* 46 S.M.U. L. REV. 601, 634–36 (1992). Accordingly, we hold that when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory. *See* TEX.R.APP. P. 61.1 ("No judgment may be reversed on appeal ... unless the Supreme Court concludes that the error complained of ... probably prevented the petitioner from properly presenting the case to the appellate courts."); *see also* TEX.R. APP. P. 44.1(a).

---

Question 16(e), "Failing to disclose information concerning an insurance policy which was known at the time of the transaction with the intention to induce another into a transaction," tracks DTPA § 17.46(b)(23).

7. The harmless error standard has been recodified without substantive change as TEX. R.APP. P. 44.1(a). *See also* TEX.R.APP. P. 61.1 (Supreme Court harmless error standard).

It is essential that the theories submitted be authorized and supported by the law governing the case. If they are not, the appellate court must, at a minimum, be able to determine whether properly submitted theories constituted the basis of the jury's verdict. Here, four of the thirteen theories in the single liability question were improperly submitted because they required that Casteel be a consumer. Yet the language of these theories was altered to remove any reference to their consumer-status requirements. Thus, the jury was confronted with four liability theories available only to consumers, but was given no indication that Casteel was required to be a consumer to succeed under any of them. Given these facts, it is possible that the jury based Crown's liability solely on one or more of these erroneously submitted theories. At any rate, it is impossible for us to conclude that the jury's answer was not based on one of the improperly submitted theories.

Although we have not considered this issue since we adopted the harmless error doctrine, we have previously held that submitting multiple independent liability theories in a single jury question is harmful when one of the theories is invalid and it cannot be determined whether liability was based on the invalid theory. *See Lancaster v. Fitch*, 112 Tex. 293, 246 S.W. 1015, 1016 (1923). In *Lancaster*, the trial court submitted a single general negligence issue with instructions regarding three distinct theories of negligence liability. *Id.* at 1015–16. The jury returned a verdict for the plaintiff. On appeal, the defendant established that the trial court should not have submitted one of the theories. The court of appeals nevertheless concluded that the error was harmless because the jury could have based its verdict on either of the properly submitted theories. We disagreed, reasoning:

> The jury may have found for [plaintiff] on each of the two issues properly submitted. On the other hand, as authorized by the pleading and the charge of the court, they may have found for [plaintiff] only on the issue that was improperly submitted. In order for courts to be able to administer the law in such cases with reasonable certainty and to lay down and maintain just and practical rules for determining the rights of parties, it is necessary that the issues made and submitted to juries, and upon which they are required to pass, be authorized and supported by the law governing the case.

*Id.* at 1016.

■ Today, we reaffirm this reasoning. When a single broad-form liability question erroneously commingles valid and invalid liability theories and the appellant's objection is timely and specific, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding. We disapprove of those courts of appeals' decisions holding that this error is harmless if any evidence supports a properly submitted liability theory. *See Provident*, 914 S.W.2d at 277–78; *Hart*, 881 S.W.2d at 511; *Bernstein*, 850 S.W.2d at 702; *Pool*, 688 S.W.2d at 882.

However, when questions are submitted in a manner that allows the appellate court to determine that the jury's verdict was actually based on a valid liability theory, the error may be harmless. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex.1995) ("Submission of an improper jury question can be harmless error if the jury's answers to other questions render the improper question immaterial."); *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749–50 (Tex.1980) (holding that the potentially improper submission of defensive issues was harmless error when the jury also found for the defendant on independent grounds).

■ Casteel argues that Texas Rule of Civil Procedure 277 required the trial court to submit all liability theories in a single broad-form question, and that the verdict should not be overturned because the trial court simply followed that rule. *See* Tex.R. Civ. P. 277. Rule 277 states,

"In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions. The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." *Id.*

Rule 277 is not absolute; rather, it mandates broad-form submission "whenever feasible." *See Westgate, Ltd. v. State,* 843 S.W.2d 448, 455 n. 6 (Tex.1992). In *Westgate,* we noted that "[s]ubmitting alternative liability standards when the governing law is unsettled might very well be a situation where broad-form submission is not feasible." *Id.* Similarly, when the trial court is unsure whether it should submit a particular theory of liability, separating liability theories best serves the policy of judicial economy underlying Rule 277 by avoiding the need for a new trial when the basis for liability cannot be determined. Furthermore, Rule 277 mandates that "[t]he court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. It is implicit in this mandate that the jury be able to base its verdict on legally valid questions and instructions. Thus, it may not be feasible to submit a single broad-form liability question that incorporates wholly separate theories of liability.

Because the error in the charge was harmful and Crown properly objected, we reverse the judgment of the court of appeals, and remand the case to the trial court for a new trial on the issue of whether Crown is liable to Casteel under Article 21.21 for unfair or deceptive practices that do not require Casteel to be a consumer.

### IV

In addition to his statutory causes of action, Casteel brought common-law claims against Crown for negligence, gross negligence, breach of a duty of good faith and fair dealing, breach of fiduciary duty, fraud, and constructive fraud. Casteel argues that the court of appeals erred in affirming the trial court's grant of partial summary judgment in favor of Crown on these claims. We disagree. We agree with the court of appeals' conclusion that Crown is entitled to summary judgment on Casteel's common-law claims, and we affirm that part of the court of appeals' judgment.

### V

■■■ Crown challenges the court of appeals' holding that, under the one satisfaction rule, Casteel is entitled to credit the amount of Crown's settlement with the Fergusons against the trial court judgment entered against Casteel in favor of the Fergusons. After the jury returned its verdict, Crown settled with the Fergusons in exchange for the dismissal of their claims against Crown and an assignment of the Fergusons' rights with regard to their claims against Casteel. The trial court then rendered judgment for the Fergusons (in whose shoes Crown now stands) against Casteel in the amount of $1,366,983 for actual damages, attorney's fees, and prejudgment interest. Casteel does not dispute his joint and several liability for this amount.[8] The court of appeals held that, under the one satisfaction rule, Casteel is entitled to a dollar-for-dollar credit for the settlement amount Crown paid the Fergusons, which Crown stipulated was at least $1,366,983. 3 S.W.3d at 591.

■■■ Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991). This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury. *Id.* Here, Crown and Casteel committed technically different acts

---

**8.** Although the jury found that Crown was 99% responsible for the Fergusons' injuries and Casteel was 1% responsible, the trial court determined liability to be joint and several because the harm suffered by the Fergusons could not be divided and apportioned.

Casteel does not challenge the trial court's ruling. We also note that this case was filed before the current proportionate responsibility statute was enacted. *See* TEX. CIV. PRAC. & REM.CODE § 33.002 (amended 1995).

that caused the Fergusons to suffer a single financial injury.

Crown argues that the settlement should not be credited against the judgment rendered against Casteel for damages Crown and Casteel jointly caused; rather, the settlement should first be credited against damages that Crown *would have been* solely responsible for had no settlement been reached. Because the jury found that Crown acted knowingly, the Fergusons would have been entitled to recover additional damages from Crown had judgment been rendered against Crown. Crown contends that the settlement credit must be subtracted from the total judgment that would have been rendered against Crown and Casteel, which includes joint and several damages as well as the additional damages for which Crown is separately liable, otherwise the Fergusons would not receive full satisfaction for their injury.

This case presents an unusual situation for applying the one satisfaction rule. Normally, claims against the settling party are dropped before the jury returns a verdict, so the amount of sole damages that the settling party is potentially liable for is rarely determined. Thus, a court usually considers only the judgment against the nonsettling defendant in applying a settlement credit. Here, Crown settled after a verdict had been returned that would have held Crown solely liable for additional damages. Crown contends that, without the settlement, the judgment that would have been rendered against Crown and Casteel is $8,201,989.01. Crown argues that, under *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1 (Tex.1991), a court should first treble the damages and calculate the total judgment due to the plaintiffs and then subtract any settlement amount to determine how much is still owed by the nonsettling defendant. Crown argues that Casteel is not entitled to any reduction in the $1,366,983 judgment against him because he has not shown that the total judgment of $8,201,898.01 less the settlement amount leaves less than $1,366,983, and therefore

he has not shown that the Fergusons would be recovering more than the amount awarded by the jury (*i.e.,* more than one satisfaction).

 Crown's reliance on *Stewart Title* is misplaced. In that case, treble damages were awarded against the *nonsettling* defendant, not the settling defendant. To effectuate the punitive purpose of treble damages, the Court held that the damages awarded against the nonsettling defendant must be trebled before applying the settlement credit. *Stewart Title*, 822 S.W.2d at 9. Thus, the facts of *Stewart Title* are inapposite. When a defendant settles after a jury verdict is returned but before a judgment is entered, the court should not apply the settlement credit to the judgment that would have been rendered against the settling defendant in determining the credit amount. Instead, the court should look to the judgment to be rendered against the nonsettling defendant and apply established principles governing settlement credits.

 Our decisions in *First Title Co. v. Garrett*, 860 S.W.2d 74 (Tex.1993), and *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917 (Tex.1998), provide guidance. Under the one satisfaction rule, the nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable. *Garrett*, 860 S.W.2d at 78; *Paschall v. Peevey*, 813 S.W.2d 710, 712 (Tex.App.—Austin 1991, writ denied); *Hill v. Budget Fin. & Thrift Co.*, 383 S.W.2d 79, 81 (Tex.Civ.App.—Dallas 1964, no writ) ("[A] plaintiff must only give credit to a non-settling defendant for that part of the damages ... receive[d] from settling defendants that are applicable to all equally."). A nonsettling defendant cannot receive credit for settlement amounts representing punitive damages. *See Ellender*, 968 S.W.2d at 927 (citing *Hill*, 383 S.W.2d at 81; *Howard v. General Cable Corp.*, 674 F.2d 351, 358 (5th Cir.1982), and *Paschall*, 813 S.W.2d at 712). Thus, consistent with *Garrett* and *Ellender*, the nonsettling defendant is entitled to offset any liability for joint and several damages by the amount

of common damages paid by the settling defendant, but not for any amount of separate or punitive damages paid by the settling defendant.

Applying these principles, Casteel is entitled to a credit for any settlement amount representing joint damages that Crown paid the Fergusons. Casteel offered proof that the settlement amount was at least $1,366,983—the amount of the judgment against him. At that point, it was the plaintiffs' (now Crown's) burden to offer evidence allocating the settlement between actual damages, for which Crown and Casteel were jointly liable, and additional damages, for which only Crown was liable, in order to limit the credit to amounts representing actual damages. *See Ellender*, 968 S.W.2d at 928. Casteel is entitled to an offset equal to the amount Crown paid in settlement of joint damages. Because the settlement was entered and judgment was rendered before our decision in *Ellender*, we would normally remand this issue to the trial court to allow Crown to prove the settlement allocation. *See id.* at 928–29. However, Crown has fully released its judgment against Casteel and has supplemented the record with a copy of the executed release of judgment and judgment lien. Crown's action moots the settlement credit issue. Accordingly, because Crown has released the judgment against Casteel, we grant Crown's Motion to Supplement the Record and vacate that part of the court of appeals' judgment remanding to the trial court to apply the settlement credit. Crown argues that we should vacate the portion of our opinion concerning settlement credits because the issue is moot. But settlement or release does not automatically require vacating an opinion. *See Houston Cable TV, Inc. v. Inwood West Civic Ass'n*, 860 S.W.2d 72, 73 (Tex.1993). Therefore, we will not vacate our opinion.

\* \* \* \* \*

In conclusion, we hold that Casteel is a "person" with standing to sue Crown for violations of Article 21.21 of the Insurance Code, but Casteel does not have standing to sue Crown for violations of those DTPA provisions incorporated within Article 21.21 that, by their terms, require Casteel to be a consumer, including DTPA sections 17.46(b)(5), (7), (9), and (23). We further hold that the inclusion of four invalid theories in a single broad-form liability question was harmful error, requiring a new trial. In addition, we hold that Crown is entitled to summary judgment on Casteel's common-law claims.

Accordingly, we affirm in part the court of appeals' judgment that Casteel take nothing on his common-law claims. Because Crown has released the judgment against Casteel, we vacate that portion of the court of appeals' judgment remanding to the trial court for application of the settlement credit. We reverse in part the court of appeals' judgment in favor of Casteel on his Article 21.21 claims for the violation of DTPA sections 17.46(b)(5), (7), (9), and (23) and render judgment that Casteel take nothing on these claims. We further reverse in part the court of appeals' judgment in favor of Casteel on his other Article 21.21 claims and remand to the trial court for proceedings consistent with this opinion.