Opinion filed February 5, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed February 5,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00152-CV 

                                                    __________

 

              ROUGH CREEK LODGE OPERATING, L.P. D/B/A ROUGH

   CREEK LODGE, AND ROUGH
CREEK INVESTORS GP, LLC, Appellants

 

                                                             V.

 

                                 DOUBLE
K HOMES, INC., Appellee

 



 

                                       On
Appeal from the 266th District Court of

 

                                                           Erath
County, Texas

 

                                                 Trial
Court Cause No. CV28178

 



 

                                                                   O
P I N I O N

This
suit arises out of a contractual dispute involving remodeling projects at a
resort owned and operated by Rough Creek Lodge Operating, L.P. d/b/a Rough
Creek Lodge, and Rough Creek Investors GP, LLC.  The jury found in favor of the
contractor, Double K Homes, Inc., and awarded actual damages of $26,245.14.  We
affirm.

                                                              I.
Background Facts








 
Rough Creek is a luxury resort covering 11,000 acres.  Double K is a home
builder and general contractor.  Rough Creek=s
resident manager, Frank Alvarez, approached Double K=s owner, Bill Cathey Jr., to discuss a
remodeling project at the resort.  They reached an oral agreement, and Double K
began remodeling Rough Creek=s
Spa.  Alvarez later asked Cathey to do some additional remodeling, and Cathey
agreed to do so for costs plus 10%.  Double K did several remodeling projects
for Rough Creek.  In late February 2005, Double K was nearing completion of its
work, and Cathey submitted a draw request for $37,175.  Rough Creek paid
$22,000 initially and subsequently $4,000 more.

Whether
because of Cathey=s
draw request or otherwise, the parties had several disagreements in March about
their respective responsibilities, and Rough Creek retained another contractor
to finish the outstanding projects.  Double K sent a demand for payment.  When
it was not paid, Double K filed a mechanic=s
lien and then filed suit seeking contractual damages, attorney=s fees, and foreclosure of
its lien.  Rough Creek counterclaimed, contending that Double K  did not
perform timely and in a workmanlike manner.

 
                                                         II. Issues

Rough
Creek challenges the judgment with four issues.  Rough Creek contends that the
evidence is legally and factually insufficient, that the trial court
erroneously utilized a broad-form liability question, and that the trial court
erred when it denied Rough Creek leave to file a trial amendment adding the
defense of excessive demand. 

                                                         III.
Analysis

 A. 
Sufficiency of the Evidence.

Rough
Creek argues that the jury charge required Double K to prove that it completely
performed all required work and that, because there was evidence that some of
the remodeling projects were uncompleted, the evidence is legally or factually
insufficient to support the jury=s
verdict.

1.  Standard of Review.  








When
conducting a legal sufficiency review, we consider all of the evidence in the
light most favorable to the verdict, crediting any favorable evidence if a
reasonable factfinder could and disregarding any contrary evidence unless a
reasonable factfinder could not. City of Keller v. Wilson, 168 S.W.3d
802, 821‑22 (Tex. 2005). When conducting a factual sufficiency review, we
consider all of the evidence and uphold the jury's finding unless the evidence
is too weak to support it or the finding is so against the overwhelming weight
of the evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986).

2.  The Charge.

The
first question asked: ADo
you find that Double K Homes, Inc. completely performed all of the work
required under its construction agreements with Rough Creek Lodge?@  The jury was instructed
in the charge that a contractor could suspend its work or be excused from
further performance in certain circumstances[1]
and that completion of a contract means Athe
actual completion of the work, other than replacement or repair of the work
performed under the contract.@


3.  The Evidence.

There
were no written agreements between Rough Creek and Double K.  Under the charge,
the jury was required to first determine what work the oral construction
agreements required and, then, whether Double K completed them or was excused
from complete performance.  The parties disputed each of these issues. 

Cathey
testified that, prior to his February draw request, there had been no
complaints about Double K=s
work.  Alvarez described the situation differently.  He criticized Double K=s installation of a
waterfall in the Spa and its construction of a horse-washing station.  He
complained that the Spa Addition still needed ceiling, painting, and electrical
work and that the Wildlife House needed hot water and painting work.  Cathey
responded that Rough Creek altered projects after they were started and, in one
instance, after it was completed and that Rough Creek was complaining about
some items that he had not heard of before.  He also testified that Double K=s work was done correctly. 








The
parties disputed whether Double K=s
work was performed timely.  Alvarez contended that Cathey promised to finish
the Wildlife House by Super Bowl Sunday.  Cathey denied ever agreeing to do
so.  He testified that he had promised to do his best to complete the work by
then but that their work was slowed down by the discovery of a den of
rattlesnakes under the house, by Rough Creek=s
decision to special order shutters, and by weather.  By e-mail dated March 2,
Alvarez advised Cathey that his boss had given Alvarez a drop dead date of
March 11 to complete the remaining remodeling work.  Alvarez acknowledged that
this was a unilaterally selected date.  Cathey testified that the March 11 date
was impossible to meet because of factors beyond his control.  He also
testified that Double K had been very busy with other projects in March and
that it was April 7 before he was able to see the light of day.

When
Cathey submitted his February draw request, he had $21,475.11 in outstanding
bills. He went over the draw request with Alvarez and expected to be paid. 
Alvarez testified that Rough Creek was shocked by Double K=s request and denied
agreeing to pay it.  Rough Creek had been paying Alike
clockwork@ but,
because Double K was nearing the end of the projects, Alvarez decided to slow
the payments down until everything was completed.  Consequently, Rough Creek
paid only $22,000.

On
March 7, Cathey and Alvarez met at Home Depot and purchased materials for the
Cabin project.  According to Cathey, Alvarez asked him to pay for the materials
and said that he was holding a check and he would release it as soon as the
punch list items were completed.  On March 18, Alvarez sent Cathey an
e-mail.  Alvarez indicated that he had deposited $4,000 in the bank for Double
K, that he had $6,000 in additional checks, and that he could get the balance
when the jobs were completed and the accounts reconciled.  He asked Cathey to
send him spreadsheets and invoices.  He also set out several punch list items.

Cathey
testified that Alvarez told him the invoices were being requested to verify
that sales tax had been paid.  Cathey assured Alvarez that all sales taxes had
been paid.  He also told Alvarez that, if Rough Creek would send him $400 to
cover his time and expenses for copying the invoices, he would provide copies
within seven business days.  Alvarez refused to pay Double K any more money
until the work was completed.  He testified that everyone always understood
that the parties would settle up at the end and that Double K would have to Atrue up@ its charges.  He also
testified that Cathey had previously agreed to provide the invoices.








Because
of the payment dispute, Cathey decided to Adraw
a line in the sand.@ 
On April 7, he sent Alvarez an e-mail and advised him that he was at a stopping
point until he received another draw.  He asked Alvarez to deposit the $6,000
he was holding into Double K=s
account.  Alternatively, he asked Alvarez to pay an outstanding $2,000 supplier
bill.  Despite his threat, Cathey sent out a worker to address the punch list
items.  Alvarez responded the same day and again refused to pay any more money
until the work was complete.  For the first time, he referenced retaining 10%
of the contract.  Even though retained funds secure payment of vendors and
subcontractors,[2] when Rough
Creek received a bill and demand letter from a supplier for materials used on
the remodeling projects, it refused to pay it.  Alvarez testified that Rough
Creek intended instead to keep the 10% until reaching an agreement with Cathey.

Unbeknownst
to Alvarez, his boss Cary Platt sent Double K a certified letter dated April
6.  Platt essentially accused Cathey of abandoning the job site.  Platt
contended that there had been no one on the job site for thirty days (Alvarez
agreed that this was untrue), and he gave Cathey five days to respond.  Cathey
responded with his own certified letter.  He took issue with many of Platt=s factual contentions, and
he denied any wrongdoing.  Cathey demanded payment of $15,968.11 for unpaid
bills and $18,085.41 for unpaid contractor fees.  He included copies of unpaid
bills.  Alternatively, he gave Platt the opportunity to pay the outstanding
bills directly.  Finally, he stated that, if not paid in five days, he would
file a lien.

Alvarez
retained another contractor to finish the remodeling projects and to repair
problems he attributed to Double K=s
work.  Rough Creek received Double K=s
invoices through discovery. Alvarez reviewed these and contended that they did
not match up with Double K=s
prior charges.  He noticed that some items had been returned but that Rough
Creek=s bill was not
credited.  He also contended that there were missing invoices for $7,409.86. 
But, he agreed that, following his audit, Rough Creek still owed Double K
$15,384.11.

4.  Is the Evidence Sufficient?








Cathey
and Alvarez disputed whether Double K performed all required work, performed it
timely, and performed it in a good and workmanlike manner.  Because a juror
could find Cathey=s
testimony credible, we must defer to the jury=s
credibility determination.  Cathey=s
testimony is factually and legally sufficient to establish that Double K
performed its work timely and in a good and workmanlike manner.  The question
is whether the evidence is sufficient to establish that Double K performed
all required work or that it had an excuse not to.

Rough
Creek contends that the charge required Double K to completely rather than
substantially perform all required work, and its brief contains an exhaustive
list of unfinished items. Many of these are matters that Double K denied
responsibility for, and we must defer to the jury=s
determination of them.  Others could be characterized as replacement or repair
work.  Because the charge excepted this from its definition of actual
completion, we must defer to the jury=s
verdict on these as well.  Our deference, however, does not resolve this
dispute because, on April 7, Cathey sent Alvarez an e-mail in which he said
that Double K had completed 95% of the Cabin project but that it was suspending
any further work until it received another draw.  Because Double K=s e-mail acknowledged that
work remained on at least one project, it cannot claim that it completed all
required work but must show that it was excused from doing so.

The
jury charge instructed the jury that complete performance was not required in
two instances.  The first required proof that Double K submitted a written
request for payment of an allowed amount for properly performed work, that
Rough Creek did not pay within thirty-five days of receiving that request, and
that Double K then provided written notice of its intent to suspend work within
ten days if payment was not received.[3]  The only
written notice of Double K=s
intent to suspend work was Cathey=s
April 7 e-mail.  In that e-mail, Cathey did not threaten to suspend work if
Double K was not paid in ten days but announced that Double K was at a stopping
point now.  Furthermore, Cathey admitted at trial that his draw request
contained an error and that he had demanded $2,000 more than he was entitled to
receive.  Double K, therefore, was not excused from further performance under
this instruction.








In
the charge, the jury was also instructed that further performance was not
required following a material breach of the agreement by Rough Creek that
justified refusing further performance or that prevented further performance. 
Rough Creek contends that this instruction is immaterial given the plain language
of question one.  We disagree.  The instruction and issue must be read
together.   In this instance, the jury was required to determine if Double K
completely performed its work until Rough Creek=s
conduct excused further performance.

Even
though Cathey=s April
7 e-mail indicated that Double K would perform no further work until paid, he
sent workers to address punch list items.  Rough Creek did not allow him to do
any work because it had already hired another company.  The jury could,
therefore, determine that, as of April 7, Double K was prevented from further
performance.

The
jury could also find that Rough Creek materially breached the agreement and
that this excused further performance.  The parties= disagreements surfaced after Cathey=s February draw request. 
Previously, Rough Creek had paid draw requests without dispute.  But it paid
only a portion of the February request and continually conditioned further
payment of even undisputed amounts upon completion of its punch list B which because of the
parties= dispute was
not an agreed list.  It unilaterally imposed a deadline for the completion of
all work.  Each of these actions could be considered a material breach. 

Because
this dispute concerns a series of oral contracts and because the parties
disputed their contractual obligations, credibility was an issue.  The jury had
cause to discredit Alvarez=s
testimony.  He justified not paying Double K because Rough Creek was retaining
10% of the contract as required by law,[4] but he
refused to use the retainage to pay a supplier for materials used at the
resort.  He also justified not paying Double K because Cathey did not provide
Rough Creek with a copy of his invoices, but a juror could question this. 
Cathey sent an accounting and a copy of his unpaid bills to Platt by letter
dated April 12.  Even though Alvarez was Rough Creek=s corporate representative and the one
responsible for reconciling the books, he was unaware of the letter until trial
because Platt did not forward it or keep a copy of the invoices.  Finally, even
after Alvarez received Double K=s
invoices through discovery and he determined that Rough Creek owed an
additional $15,384.11, Rough Creek still did not pay.  Alvarez admitted that
Rough Creek intended to withhold payment until it reached an agreement with
Double K Aon
everything.@  The jury
could reasonably find that this was the sole reason for not paying and that it
was done to force Double K into a more favorable agreement.








The
evidence is legally and factually sufficient to support the jury=s answer to question one. 
Rough Creek=s first
and second issues are overruled.

B. 
Did the Trial Court Err by Utilizing a Broad-Form Liability Question?

Rough
Creek next argues that the trial court improperly utilized a broad-form
liability question because it commingled valid and invalid liability grounds. 
Rough Creek reasons that it is impossible to know if the jury found that Double
K completely performed all required work, or that it was entitled to suspend
further work, or that it was excused from further performance.

Double
K answers that Rough Creek has waived this issue because it was not properly
briefed.  Tex.R.App.P. 38.1(h)
provides that an appellant=s
brief Amust contain a
clear and concise argument for the contentions made, with appropriate citations
to authorities and to the record.@ 
This requires a specific argument and analysis showing that the record and the
law support the contention.  Deutsch v. Hoover, Bax & Slovacek, L.L.P.,
97 S.W.3d 179, 198-99 (Tex. App.CHouston
[14th Dist.] 2002, no pet.). We must interpret this requirement reasonably and
liberally.  Republic Underwriters Ins. Co. v. Mex-Tex, Inc., 150 S.W.3d
423, 427 (Tex. 2004).  Rough Creek=s
brief satisfies this standard. 

The
trial court=s
submission of jury questions and instructions is reviewed under an abuse of
discretion standard, recognizing that broad‑form submission of questions
is favored in Texas. Fin. Ins. Co. v. Ragsdale, 166 S.W.3d 922, 926
(Tex. App.CEl Paso
2005, no pet.).   A trial court abuses its discretion if it acts in an
arbitrary or unreasonable manner without reference to any guiding rules or
principles.  Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003).  In
reviewing jury charges, we consider the pleadings, the evidence presented at
trial, and the charge in its entirety. De Leon v. Furr=s Supermarkets, Inc.,
31 S.W.3d 297, 300 (Tex. App.CEl
Paso 2000, no pet.).  Even if the trial court abuses its discretion, we may not
reverse unless the error, when viewed in light of the totality of the
circumstances, the error amounted to such a denial of the rights of the
complaining party as was reasonably calculated to and probably did cause
rendition of an improper judgment.  Id. Whether the charge submits the
proper controlling issues in the case, in terms of theories of recovery or
defense, is a question of law, that we review de novo. Fin. Ins. Co.,
166 S.W.3d at 926.








Trial
courts are required, whenever feasible, to utilize broad-form questions in
their jury charge.  See Tex. R.
Civ. P. 277.  But the Texas Supreme Court has recognized that in some
instances this broad-form preference must defer to a granulated submission.  In
Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 390 (Tex. 2000), the
court held that it was error to utilize a single broad-form liability question
combining five distinct DTPA-based theories of liability with eight other
theories because the plaintiff lacked standing to assert four of the five DTPA
theories.  The court found that this error was harmful because a reviewing
court could not determine whether the jury based its verdict on a valid or
invalid theory of liability.  In Harris County v. Smith, 96 S.W.3d 230,
231 (Tex. 2002), the trial court asked the jury to determine a lump sum damage
award for each plaintiff, and it listed the elements that the jury could consider. 
Unfortunately, there was no evidence for some of the listed elements.  The
court held that the rationale in Casteel applied and that instructing
the jury to consider elements for which there was no evidence was harmful.  Id.
at 236.  Similarly, in Romero v. KPH Consolidation, Inc., 166 S.W.3d 212
(Tex. 2005), the court held that there was no evidence to support the
submission of a malicious credentialing claim and that it was harmful error to
utilize a broad-form apportioning issue because it allowed the jury to consider
both the invalid credentialing claim and a separate, valid negligence claim.  Id.
at 215.

Not
all charge errors, however, are harmful.  In Bed, Bath & Beyond v.
Urista, 211 S.W.3d 753 (Tex. 2006), the trial court erroneously submitted an
unavoidable accident instruction.  The court found that harm could not be
presumed and that, when it reviewed the entire record, it could not conclude
that the instruction caused the case to be decided differently than it would
have been otherwise.  Id. at 758.  The court distinguished Casteel
and Harris County by noting that they dealt with multiple theories of
liability and multiple damage elements but that this case concerned a single
liability theory.  Id. at 756-57; see also Columbia Med. Ctr. of Las
Colinas v. Bush ex rel. Bush, 122 S.W.3d 835 (Tex. App.CFort Worth 2003, pet.
denied) (allegations of multiple acts of negligence are not separate theories
of liability and do not make a broad-form submission improper).








This
case is much closer to Urista than Casteel or Harris County. 
Unlike Casteel, Double K asserted a single cause of action:  breach
of contract.  Merely because this required the resolution of multiple fact
questions does not convert it into multiple theories of liability.  Unlike Harris
County, the jury was not instructed to consider an element of damage for
which there was no evidence.  While we do not know the jury=s exact thought process, we
do know that there is sufficient evidence to support its determination that
Rough Creek breached its agreement with Double K.  The liability question could
have been rephrased B
although we note that Rough Creek did not object to the form of that question,
and the jury should not have been asked if Double K completed its work or
instructed that it could suspend its work, but to accept Rough Creek=s argument that this was
harmful would require either that we disregard Urista and presume harm,
or that we disregard Rule 277 and encourage granulated charges.  Because we can
do neither, the third issue is overruled. 

C.  Did the
Trial Court Err by Denying Rough Creek=s
Motion to Add the Defense of                Excessive Demand by Trial Amendment?

 

After
both sides rested, Rough Creek orally requested leave to amend its answer to
include the defense of excessive demand, contending that this issue had been
tried by consent.  Double K objected.  The trial court denied Rough Creek=s request, stating that the
matters giving rise to this defense were clearly known by both sides well
before trial started and that it could have been easily included in a
pleading.  The court also expressed some doubt that the issue had been tried by
consent because the evidence went to other issues in the case.

We
review a trial court=s
order granting or denying a request for a trial amendment under an abuse of
discretion standard.  Chase Manhattan Mort. Corp. v. Cook, 141 S.W.3d
709, 716 (Tex. App.CEastland
2004, no pet.).  A trial court has no discretion to refuse an amendment unless
(1) the  opposing party presents evidence of surprise or prejudice or (2)
the amendment contains the assertion of a new cause of action or defense and,
thus, is prejudicial on its face and the opposing party objects to the
amendment.  Menix v. Allstate Indem. Co., 83 S.W.3d 877, 881 (Tex. App.CEastland 2002, pet.
denied).  The burden of showing prejudice or surprise rests on the party
resisting the amendment.  Id.  Surprise may be shown on the face of the
amendment when it would reshape the cause of action to the prejudice of the
other party.  Trailways, Inc. v. Clark, 794 S.W.2d 479, 492 (Tex. App.CCorpus Christi 1990, writ
denied).  When the record shows a lack of diligence in bringing the amendment
and when the matter appears to have been known by the party seeking to amend
and is not based on any newly discovered facts, the court does not abuse its
discretion in refusing to allow the amendment.  Chase Manhattan, 141
S.W.3d at 716.  When an amended pleading is prejudicial on its face and the
trial court denies leave to file the amended pleading, the burden shifts to the
party who offered the amended pleading to clearly demonstrate on appeal that
the trial court abused its discretion.  Hardin v. Hardin, 597 S.W.2d
347, 349 (Tex. 1980).








Rough
Creek=s trial
amendment was prejudicial on its face because it added a new defense.  Rough
Creek did not assert that this defense was based upon any newly discovered
facts but instead reiterated a position taken well before suit was filed:  that
Cathey=s pre-suit
demand was for more than Double K was entitled to receive.  The trial court did
not abuse its discretion by denying Rough Creek=s
trial amendment, and the fourth issue is overruled.  

                                                         IV.
Holding

 The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

February 5, 2009

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.









     [1]The charge
instructed the jury:

 

(a)  A contractor is authorized by law to suspend
further work on the 10th day after the occurrence of both of the
following circumstances: (1) within 35 days of receiving a written request for
payment for an amount that is allowed to the contractor under the contract for
properly performed work, the owner fails to pay the undisputed amounts; and (2)
thereafter, the contractor gives the owner written notice that the payment has
not been received and stating the intent of the contractor to suspend work for nonpayment.

 

(b)  Further performance under the agreement is not required if the
owner=s conduct (1) amounted to a material breach of the
agreement that justified the contractor refusing further performance or (2)
that prevented the contractor=s further
performance.





     [2]See Tex. Prop. Code Ann. ' 53.102 (Vernon 2007).





     [3]The parties advise
us that this instruction was based upon Tex.
Prop. Code Ann. ' 28.009(a) (Vernon 2000). 
Because there are some distinctions between the court=s instruction and this statute, we have limited our
consideration to the instruction.  





     [4]See Tex. Prop. Code Ann. ' 53.101 (Vernon 2007).