NUMBER
13-02-675-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

J & E OIL
COMPANY, INC., AND JERRY BARTH,                       Appellants,

                                                             v.

ATOFINA PETROCHEMICALS, INC., ET
AL,                                 Appellees.

 

 

                    On appeal from the 206th District
Court

                                        of
Hidalgo County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Rodriguez

 

      Opinion by Chief
Justice Valdez

 

 

 








Appellants, J&E Oil Co., Inc. and its owner,
Jerry Barth [hereinafter AJ&E Oil@], appeal from a jury verdict and judgment in favor
of appellee, Atofina Petrochemicals, Inc., f/k/a/ FINA Oil & Chemical Co
[hereinafter AFINA@].  We affirm.

Background

This case rises from two contracts that created an
exclusive fuel distribution relationship between FINA and J&E Oil.  During the relevant time period, J&E Oil
owned fifty-two gas stations with attached convenience stores throughout South
Texas.  Prior to 1996, J&E Oil=s gas stations were supplied by a variety of fuel
companies.  In 1996, J&E Oil
attempted to find a single fuel supplier for all of its stores; however, after
being unable to find a single supplier for all fifty-two stores, J&E Oil
opted to contract with two suppliers, Chevron Corporation and FINA.

FINA agreed to act as the sole fuel supplier for
twenty-eight of J&E Oil=s stores.  The
negotiations between J&E Oil and FINA culminated in 1997 with the execution
of a ARevised Branding Proposal@ and a ADistributor Sales Contract@ [hereinafter Athe contracts@].  The
contracts together created a ten-year distribution agreement in which J&E
Oil promised to purchase 20,544,000 gallons of gasoline and 10,235,000 gallons
of diesel fuel annually.  FINA agreed to
convert the J&E Oil stores to the FINA brand, supplying the requisite
signs, decals and other branding materials, as well as promising to make FINA
gasoline available to J&E Oil at its supply terminals.  Other clauses in the contracts provided for a
Aconversion incentive rebate,@ controlled the fuel prices, established certain
marketing and credit card programs, and allowed for J&E Oil=s participation in two special FINA marketing
programs as a reward if certain volumes of FINA gasoline were purchased
annually.  








FINA began the process of converting the J&E Oil
stores to the FINA brand.  At this point,
Barth recommended that a local company, Hooks Sign Company, handle the work of
installing the FINA signs at the J&E Oil stores.  FINA agreed and Hooks began the installation
process.  There is significant dispute
between the parties as to the effect of this agreement; J&E Oil insists
that the use of Hooks did not absolve FINA of its contractual responsibility
for converting the stores, while FINA argues that J&E Oil, by recommending
and insuring Hooks, effectively assumed responsibility for the store
conversions.  

Regardless, the J&E Oil stores were not
converted by August 1, 1997, the commencement date of the distribution
agreement. The twenty-eight stores were not completely converted until October
1998.   By then, various problems had
already arisen between the parties: 
J&E Oil alleged that FINA=s tardiness in converting the stores made J&E
Oil lose customers and sales, and further alleged that FINA=s terminals began to suffer supply outages so that
J&E Oil could not obtain gasoline for its stores or meet its sales volume
requirements.  J&E Oil also
complained that FINA refused to pay accrued monetary awards earned from the
various marketing incentive programs. 
FINA alleged that J&E Oil refused to decide on various signage
issues, thereby delaying the conversion process, and failed to meet its
purchasing requirements.  FINA also
insisted that J&E Oil did not qualify for its special marketing
programs.  However, neither party
terminated the contract despite these disputes. 


In August 2000, FINA conveyed its rights under the
contracts to ALON USA, L.P.  J&E Oil
was willing to work with ALON in place of FINA, but continued to experience supply
problems at the ALON fuel terminals, and failed to purchase the required
contractual volumes.  By January of 2001,
J&E Oil claimed it was no longer in a financial position to endure the
inability of ALON to meet its obligations, and, furthermore, it did not have
sufficient funds to meet its expenses. 
ALON then eliminated J&E Oil=s credit line with the company, effectively
terminating the contracts.  








J&E Oil sued FINA and ALON, alleging breach of contract;
ALON then filed counterclaims against J&E Oil and Barth for breach of
contract.  J&E Oil and ALON also
filed claims against each other for conversion and theft.  After a trial before a jury, the jury found
that FINA, ALON and J&E Oil had all breached their contracts.  However, the jury found that the breaches by
FINA and ALON were excused while the breach by J&E Oil was not.  The jury also found that ALON and J&E Oil
had converted each other=s property and that J&E Oil had committed
theft.  J&E Oil appealed.

Following its appeal to this Court, J&E Oil
settled its claims against ALON.  The
appeal and cross-appeal were accordingly dismissed.  See J&E Oil Co. v. ALON USA, L.P.,
Nos. 13‑02‑675‑CV & 13‑04‑441‑CV, 2004
Tex. App. LEXIS 8085, at *2 (Tex. App.BCorpus Christi 
Sep. 2, 2004, no pet.) (per curiam). 
We now consider the remaining claims on appeal, which consist of J&E
Oil=s claims against FINA.    

Motion for Directed Verdict

By its first issue, J&E Oil alleges that the
trial court should have ruled as a matter of law that FINA breached the
contracts without an excuse by failing to convert all twenty-eight stores by
August 1, 1997.  Therefore, J&E Oil
argues, the trial court erred by denying its motion for directed verdict. 

J&E Oil=s motion for directed verdict, however, is not in
the record before us, although FINA and ALON=s
motions for directed verdicts and judgment as a matter of law can be found in
the record.  Given that J&E Oil=s motion is not in the record, the trial court=s denial of this motion is not properly before us
and we are unable to address this issue on appeal.  See Tex.
R. App. P. 34.5. 








We see that in the transcript of the hearing on
J&E Oil=s motion, J&E Oil stated that its motion for
directed verdict said Athat the plaintiffs are entitled to a finding that
FINA breached the distributor sales contract. . . . [O]ur motion goes only to
that first question of breach.  It
does not address at this point any of their affirmative defenses that might be
an excuse for the breach.@ (emphasis added). 
Therefore, J&E Oil=s description in its appellate brief of its motion
as including the argument that FINA breached without an excuse contradicts
their own statement at the hearing that excuse was not an issue.  Furthermore, the argument that J&E Oil is
entitled to a finding that FINA breached the distributor sales contract (which
the transcript indicates is the only argument made in the motion) is moot, as
the jury found that FINA indeed did breach the contract and FINA did not appeal
this finding.  

Accordingly, J&E Oil=s first issue is waived.  

FINA=s Breach of Contract

A.  Legal and Factual Sufficiency 

By its second issue, J&E Oil argues that the
evidence was legally and factually insufficient to support a finding that FINA=s breach of the contract was excused. 

In conducting a legal sufficiency review, all the
evidence must be considered in a light most favorable to the party in whose
favor the verdict has been rendered, and every reasonable inference deducible
from the evidence is to be indulged in that party's favor. See Formosa
Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d
41, 48 (Tex. 1998); see also Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.
2001).  We disregard all contrary
evidence that a reasonable jury could have disbelieved.  See City of Keller v. Wilson, 168
S.W.3d 802, 819 (Tex. 2005).








            In conducting a factual sufficiency
review, we view all the evidence in a neutral light to determine whether the
contested finding is so contrary to the great weight and preponderance of the
evidence as to be manifestly unjust, shock the conscience, or clearly
demonstrate bias. See Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d
757, 761‑62 (Tex. 2003).

B. Jury Charge 

J&E Oil argues that the jury could not have
found that FINA=s breach of its contracts with J&E Oil was
excused, given that the evidence to support this finding was both legally and
factually insufficient.  The jury was
asked in Question 1 of the charge: ADid FINA fail to comply with the terms of the
Contracts?@  They
answered AYes.@[1]  Question 2
then asked the following:

Was FINA=s failure to comply with the Contracts excused?

 

You are instructed that FINA=s failure to comply may be excused if you find that
any of the following occurred:

 

1) J&E Oil=s previous failure to comply with a material
obligation of this same agreement;

 








2) J&E Oil=s waiver of the various provisions of the contract
of which it complains;

Waiver is the intentional surrender of a known right
or intention conduct inconsistent with claiming that right.

 

3) FINA=s performance was accepted by J&E Oil as full
satisfaction of FINA=s original obligations under the Contracts;

 

4) J&E Oil=s actions which led FINA to reasonably believe, to
its detriment, that compliance with a particular part of the contract would not
be required;

When a party=s course of conduct leads another party to believe
that compliance will not be required, and the second party relies on that
belief to its detriment, the original party cannot then seek to enforce that
provision of the Contract;

 

5) J&E Oil is equitably estopped from
complaining of FINA=s failure to comply;

AEquitable estoppel@ is
established if (a) J&E Oil by words or conduct made a false representation
or concealed material facts . . . with the intention that FINA would rely on
the false representation or concealment in acting or deciding not to act; AND
(b) FINA did not know and had no means of knowing the real facts, and relied to
its detriment on the false representation or concealment of material facts;

 

6) J&E Oil=s prior repudiation of the same agreement;

ARepudiation@ is the indication of a party to a contract, either
through words or actions, that he is not going to perform his obligations under
the contract in the future;

 

7) J&E Oil=s failure to satisfy a condition precedent to FINA=s performance . . .;

 

8) J&E Oil=s failure to purchase at least 1,369,600 gallons of
gasoline per month from FINA;

 

9) FINA could allocate its available support
products among all of its customers as FINA, in its sole discretion, deemed
reasonable, without liability to J&E Oil for failure to deliver the
quantities of gasoline which J&E Oil may have required.  

 

Answer AYes@ or ANo.@

 








The jury answered AYes.@  There is no
indication which of the nine possible grounds listed in the charge the jury
relied upon in reaching its decision that FINA=s
breach of contract was indeed excused.  
Thus, if the evidence is sufficient to support any one of the liability
theories available, we will not reverse, regardless of whether any of the other
theories of liability are not supported by the evidence.[2]   See
Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 389 (Tex. 2000) (noting that
if jury verdict is based on a valid liability theory, invalid theories also
presented to the jury do not have to be considered).  The distributor sales contract between FINA
and J&E Oil includes a clause entitled AWaiver@ which provides as follows:

The failure of either party hereto in any one or
more instances to insist upon the performance by the other party of any term or
condition hereof or to exercise any right or privilege herein conferred shall
not be construed thereafter as a waiver of any such term, condition, right or
privilege, but the same shall continue in full force and effect as herein
written.  In addition, the right of
either party to require strict performance by the other of any and/or all
obligations imposed upon the other by this Contract shall not in any way be
affected by any previous waiver, forbearance or course of dealing. 

 








Thus, any breach of the contract by FINA, which the
jury declared had occurred by their response to Question 1, could not
constitute a waiver by J&E Oil to enforcement of the breached terms of the
contracts.  This clause thus precluded
FINA=s ability to claim its breach of the contracts was
excused by J&E Oil=s waiver of various terms or that its performance,
although in breach of the contracts, was accepted by J&E Oil as full
satisfaction of its original obligations. 


However, the contracts also state that J&E Oil
will purchase from FINA no less than eighty percent and no more than 120
percent of the estimated annual quantity of 20,544,000 gallons of gasoline at
J&E Oil=s FINA-branded retail stores.  This translates to an annual purchasing
requirement of no less than 16,435,200 gallons, which averages to 1,369,600
gallons of gasoline per month.[3]  The contracts also state that J&E Oil
will sell no FINA gas at any location other than a FINA-branded store.  However, in the trial testimony it was
undisputed that J&E Oil did not consistently meet its purchasing
requirements for its FINA-branded stores, and that it did purchase gasoline
from FINA which was sold at an unbranded store. 
Because the AWaiver@ clause applied equally to both parties, these
breaches of the contracts by J&E Oil were not excused by FINA=s failure to insist upon their satisfaction.

Furthermore, the language of the contracts
establishes that such a breach would be considered material:  AFINA and [J&E Oil] acknowledge and agree that
the estimated annual quantities set forth in this Contract are reasonable,
important, and of material significance to the Contract.  [J&E Oil] understands and agrees that the
failure by [J&E Oil] to purchase the required volumes of Product shall be a
violation of this Contract.@  No other
requirements in the contracts are explicitly named to be of material
importance.    








It is a fundamental principle of contract law that
when one party to a contract commits a material breach of that contract, the
other party is discharged or excused from further performance.  Mustang Pipeline Co. v. Driver Pipeline
Co., 134 S.W.3d 195, 196 (Tex. 2004) (per curiam).  Thus, when J&E Oil failed to meet its
purchasing requirements and sold FINA product at unbranded stores, this
constituted a material breach of the contracts and FINA was excused from
further performance.  

The language in the contracts and the admissions at
trial regarding J&E Oil=s purchases of gasoline from FINA, coupled with the
lack of contrary evidence that a jury could not disregard, constitute legally
sufficient evidence to support the jury=s finding that FINA=s
breach of contract was excused by J&E Oil=s
breach of the same contracts.  See
City of Keller, 168 S.W.3d at 819. 
Also, the jury finding that FINA=s breach was excused is not so contrary to the great
weight and preponderance of the evidence as to be manifestly unjust. See
Golden Eagle Archery, 116 S.W.3d at 761‑62.  Thus, the evidence is legally and factually
sufficient to support the outcome reached by the jury.  

J&E Oil=s second issue is overruled.  

J&E Oil=s
Breach of Contract

By its third issue, J&E Oil argues that the
evidence was legally and factually insufficient to support the jury=s finding that J&E Oil=s own breach was not excused by FINA=s prior breach.

As previously noted, in August of 2000, FINA
assigned its rights and obligations under the contracts with J&E Oil to
ALON.  Thus, when initiating this suit,
J&E Oil filed claims against both FINA and ALON for breach of
contract.  FINA did not file any
counterclaims against J&E Oil.  ALON,
however, did assert claims against J&E Oil for breach of contract and
conversion.  








The jury was asked in Question 6 to determine the
following:  ADid J&E Oil fail to comply with the Contracts?@  The jury
responded:  AYes.@  In Question
7, the jury was asked AWas J&E Oil=s failure to comply with the Contracts between
J&E Oil and ALON excused?@  The jury was
never asked whether J&E Oil=s failure to comply with its earlier contractual
relationship with FINA was excused.  The
jury was given the following grounds for finding excuse:

1) FINA and/or ALON=s
previous failure to comply with a material obligation of the same agreement;

 

2) FINA and/or ALON=s
waiver of the various provisions of the contact of which it complains; . . . 

 

3) ALON is equitably estopped from complaining of
J&E Oil=s failure to comply; . . . 

 

4) ALON=s prior repudiation of the same agreement.

 

The jury answered ANo,@ indicating that J&E Oil=s breach of contract was not excused.  

Questions 6 and 7 were posed to the jury in order to
respond to ALON=s counterclaim against J&E Oil for breach of
contract; FINA did not assert any breach of contract claims against J&E
Oil.  The language of the questions
related to the relationship between ALON and J&E Oil.  The jury did not necessarily find that
J&E Oil=s own breach was not excused by FINA=s breach, as it was not required to consider any
possible breaches or other behavior by FINA in reaching its decision and could
rely solely on the relationship between J&E Oil and ALON.  See Crown Life Ins. Co., 22
S.W.3d at 389.








Because ALON and J&E Oil have settled their
appellate claims against each other, we lack jurisdiction to consider claims
between these parties.  See Seiter v.
Marschall, 147 S.W. 226, 227 (Tex. 1912) (noting that settlement will
divest appellate court of jurisdiction). 
We conclude that this issue relates only to ALON=s counterclaim against J&E Oil and thus, does
not affect or pertain to FINA.   
Accordingly, we will not consider it, and J&E Oil=s third issue is overruled.

Conclusion

Given that the remaining issues raised by J&E
Oil on appeal apply only to ALON, the settling party, and that we have
overruled all issues raised by J&E Oil pertaining to FINA, we affirm the
judgment of the trial court.

 

                                           

Rogelio Valdez,

Chief Justice

 

 

 

Memorandum Opinion delivered and filed

this 27th day of October, 2005.











[1]We note that FINA argues at length
in its appellate brief that there was no breach of contract by FINA because (1)
there was no requirement in the contracts that the stores had to be converted
by August 1, 1997, and (2) J&E Oil, not FINA, assumed responsibility for
converting the stores, given that J&E Oil=s recommended sign installer, Hooks
Sign Co., would request materials from FINA on an as-needed basis.  FINA also asserts that a store did not
necessarily have to be converted to the FINA brand before J&E Oil began
purchasing FINA gasoline.

However, we note that
the jury, in answering Ayes@ to Question 1, had to find that
(1) in order for J&E Oil to comply with its obligation to begin purchasing
gasoline on August 1, 1997, FINA was obligated to complete the process of
converting all twenty-eight stores to the FINA brand by August 1, 1997, (2) the
obligation to convert the stores to the FINA brand was that of FINA, and (3) a
store had to be converted to the FINA brand before J&E Oil could purchase
FINA gasoline to sell at that store. 
FINA did not appeal any of these findings.  Therefore, we are bound by the jury=s decision on this question, and we
cannot consider the merits of FINA=s assertions as they constitute indirect attacks on
unappealed findings.   See Tex. R. App. P. 25.1(c) (AA party who seeks to alter the
trial court's judgment or other appealable order must file a notice of appeal.@).





[2]FINA argues that because J&E
Oil=s appellate brief only specifically
addresses four of the nine grounds of excuse listed in the jury charge, J&E
Oil has waived its complaint regarding the sufficiency of the evidence
regarding excuse.  However, the case they
cite that is most on point for this proposition, Missouri Pac. R.R. Co. v.
Lemon, 861 S.W.2d 501, 509 n.1 (Tex. App.BHouston [14th Dist.] 1993, writ
dism=d by agr.), suggests that a
sufficiency argument on appeal could be waived by a failure to object to every
possible ground but ultimately addresses the merits of the sufficiency
challenge.  Given the similarity of the
circumstances presented, we will do the same in this case.  





[3]Another clause in the contracts
required that purchases be made ratably and includes Athe requirement to purchase
quantities reasonably evenly over the course of each month.@ Neither party appears to dispute
the conclusion that the contracts could be violated through a failure to
purchase the required monthly volume of gasoline, despite the fact that the
contracts required the purchase of a specific annual volume of gasoline.