



# DISSENTING OPINION

Nos. 04-07-00669-CR, 04-07-00670-CR,
04-07-00671-CR, & 04-07-00672-CR

The **STATE** of Texas,
Appellant

v.

Sophia D. **CHACON**, Grayce G. Benesch, & Charlene Piekarski,
Appellees

From the County Court at Law No. 3, Bexar County, Texas
Trial Court Nos. 115107, 115108, 115109, & 115111
Honorable David Rodriguez, Judge Presiding

Opinion by: Phylis J. Speedlin, Justice
Dissenting opinion by: Steven C. Hilbig, Justice

Sitting:     Alma L. López, Chief Justice
           Phylis J. Speedlin, Justice
           Steven C. Hilbig, Justice

Delivered and Filed:   September 17, 2008

I respectfully dissent from the majority's determination that there is an irreconcilable conflict between Chapter 243 of the Texas Local Government Code and the City of San Antonio's ("the City") Ordinance with regard to enforcement for violations of regulations governing sexually oriented businesses, compelling a finding of preemption.

Relying upon *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, appellees argue the Ordinance is void because its enforcement provision, section 21-303(1), provided for a penalty different from that prescribed by section 243.010(b) of the Local Government Code. *See* 852 S.W.2d 489 (Tex. 1993); *see also Abrams v. State*, 563 S.W.2d 610, 615 (Tex. Crim. App. 1978) (holding, based on language of article XI, section 5 of constitution, ordinance that conflicted with statute was void). Their argument suggests, and the majority agrees, the Ordinance was void because the Texas Legislature preempted regulation in this area and the City's action in passing an ordinance in conflict with the State's regulation – classifying a violation of the ordinance a Class C rather than a Class A misdemeanor – renders the Ordinance void. The State disagrees, arguing that by its very terms Chapter 243 contains clear language establishing the State of Texas did not intend to preempt home-rule cities from enacting ordinances that regulate sexually oriented businesses. The majority clearly agrees with appellees, but I agree with the State.

If the State of Texas intends to preempt an area of regulation, including a subject matter usually encompassed by the broad powers of a home-rule city, it must do so with "unmistakable clarity." *Dallas Merchant's*, 852 S.W.2d at 491. In *Dallas Merchant's*, the supreme court decided the passage of the Texas Alcoholic Beverage Code by the Texas Legislature prevented the City of Dallas from enacting ordinances regulating the areas where businesses would be allowed to sell alcohol. The court noted that section 109.57(b) of the code stated as follows:

> It is the intent of the legislature that this code shall exclusively govern the regulation of alcoholic beverages in this state, and that except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code.

*Dallas Merchant's*, 852 S.W.2d at 491. Given the unmistakable clarity of the Legislature's intent, the court held the city ordinances to be invalid as preempted by the State. *Id.* at 491, 493.

Here, a plain reading of section 243.001(b) demonstrates with "unmistakable clarity" the Legislature did not intend to preempt regulation of sexually oriented businesses. "This chapter does not diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters." TEX. LOC. GOV'T CODE ANN. § 243.001(b) (Vernon 2005). Accordingly, given the mandates of *Dallas Merchant's* and its progeny, it cannot be said that the Ordinance is void because the Legislature preempted regulation of sexually oriented businesses, precluding home-rule cities from exercising its inherent powers.

Nor is the Ordinance void because of a conflict with state law as found in *Abrams v. State*, 563 S.W.2d 610 (Tex. Crim. App. 1978). In *Abrams*, the court of criminal appeals considered the validity of a city ordinance that created the offense of speeding where the offense was defined as driving at a rate of speed greater than thirty miles per hour unless otherwise posted. *Id*. at 613. The court noted the Texas Legislature had enacted an offense that defined speeding as driving a vehicle at a "speed greater that is reasonable and prudent under the circumstances then existing . . ." *Id.* Because the ordinance defined an offense by way of a rigid speed limit, it conflicted with the state law defining speeding in a different manner. *Id.* at 615. The court held the ordinance to be void because of this conflict. *Id.* Here, Chapter 243 does not define a criminal offense but rather grants authority to local governments to define an offense through appropriate ordinances.

*Ex parte Devereaux*, 389 S.W.2d 672 (Tex. Crim. App. 1965) is more analogous to the present case. In *Devereaux*, the court of criminal appeals held a city ordinance relating to speeding

to be invalid as to its punishment provisions because the city penalty was from one to two hundred dollars whereas the state penalty was a fine "up to two hundred dollars." *Id.* at 673. Accordingly, under *Devereaux*, an ordinance is invalid if both the ordinance and the statute define an offense, but the ordinance sets a punishment different from that provided by the statute. *See id.* Here, unlike in *Devereaux*, there is no state statute criminalizing the same conduct prohibited by the Ordinance. Based on the logic in *Devereaux*, there is no conflict between the enforcement provision of the Ordinance and section 243.010(b).

Moreover, to interpret section 243.010(b) as creating a mandate that every ordinance relating to a sexually oriented business must be a Class A misdemeanor would render meaningless the clear and express language of section 243.001(b), which is contrary to long-standing rules of statutory construction. *See, e.g., Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007) (mandating that for purposes of statutory construction courts must read statute as a whole and interpret it to give effect to every part); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex. 1995) (holding courts cannot read statutory language as pointless if it is susceptible to another construction).

The majority's interpretation ignores the expressed legislative intent documented in the legislative history of Chapter 243. The primary rule in statutory interpretation is to give effect to legislative intent. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). Courts are to construe statutes as written and, if possible, ascertain legislative intent from the language of the statute. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). While courts must look to the plain and common meaning of the words in the statute to determine intent, if there is an

ambiguity, rules of construction and extrinsic aids can be used to resolve the conflict. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999). Given the perceived conflict between Local Government Code sections 243.001(b) and 243.010(b), we may look to the legislative history for guidance. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (holding legislative history cannot be used to disregard or alter express statutory terms when their meaning is clear in context of entire code); *see also* TEX. GOV'T CODE ANN. § 311.023(3) (Vernon 2005) (stating that in construing statute, court may consider legislative history).

When Senate Bill 525, the bill containing the current version of Chapter 243 of the Texas Local Government Code, was presented to the Senate Intergovernmental Relations Committee, Senator Frank Tejeda, the sponsoring senator, testified the bill was being presented to give counties the authority to regulate sexually oriented businesses. Municipal and County Authority to Regulate Sexually Oriented Business: Hearings on Tex. S.B. 525 Before the Senate Committee on Intergovernmental Relations, 71st Leg., R.S. (Feb. 21, 1989) (considering bill in public hearing) (transcript available from Senate Staff Services Office). Senator Tejeda told the committee home-rule cities already had such authority, but in response to city ordinances regulating sexually oriented businesses, the businesses were moving beyond the city's control and into the county. *Id*; Municipal and County Authority to Regulate Sexually Oriented Business: Hearings on Tex. S.B. 525 Before the Senate Committee on Intergovernmental Relations, 71st Leg., R.S. (March 2, 1989) (bill read second time, amended, read third time, voted out of committee) (transcript available from Senate Staff Services Office). Chapter 243 would give counties (and general-rule cities) the same authority

as home-rule cities.  *Id*.  When questioned about the effect of the bill and whether it would affect the

power already held by home-rule cities, the sponsoring senator stated:

> And as we have discussed . . . this bill is not intended to preempt any other, you know, for state preemption.  We do not want to preempt any of the local rules or regulations or ordinances or orders that may already be in place.  For example, the City of Dallas, we do not want to preempt or in any way diminish what they have already done.
>
> * * *
>
> We do not want to diminish or in any way preempt.  We want to expand and perhaps give them [cities] additional authority to be able to deal with these types of businesses.

Municipal and County Authority to Regulate Sexually Oriented Business: Hearings on Tex. S.B. 525

Before the Senate Committee on Intergovernmental Relations, 71st Leg., R.S. (March 2, 1989) (bill

read second time, amended, read third time, voted out of committee) (transcript available from

Senate Staff Services Office).

Senator Hector Uribe questioned Senator Tejeda concerning the interplay of any county

ordinance enacted under the statute with an existing city regulation:

| | |
|---|---|
| Senator Uribe: | . . . as I glance at the reading indicates to me that both the Commissioners Court and the municipality are given identical authority and that the Commissioners Court's authority would extend to areas within the municipality.  Am I reading that correctly?  Could a Commissioners Court adopt an order that is more restrictive that a municipality? |
| Senator Tejeda: | No, not within the incorporated boundaries of whatever city or municipality may be there.  We're talking about unincorporated areas. |

Municipal and County Authority to Regulate Sexually Oriented Business: Hearings on Tex. S.B. 525 Before the Senate Committee on Intergovernmental Relations, 71st Leg., R.S. (Feb. 21, 1989) (considering bill in public hearing) (transcript available from Senate Staff Services Office). This exchange makes it very clear the Legislature intended section 241.001(b) be given its full meaning and Chapter 243 does not diminish the existing authority of a home-rule city to regulate sexually oriented businesses. The City had the authority to pass ordinances regulating sexually oriented businesses, setting punishment for violations as Class C misdemeanors, before the passage of Chapter 243 and continues to have such authority. The legislative history establishes the Legislature's intent not to disturb this pre-existing authority, but to enhance it by allowing the City to punish violations of ordinances regulating sexually oriented businesses, if desired, as a Class A misdemeanor.[1]

Interpreting Chapter 243, specifically section 243.010(b), as an additional grant of authority, rather than a limitation as stated in the legislative history, harmonizes the provision with section 243.001(b), which states Chapter 243 is not to diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters, and avoids rendering section 243.010(b) meaningless. The Texas Legislature did not intend to preempt the regulation of sexually oriented businesses. The City of San Antonio, relying on its authority as a home-rule city, was free

---

[1]There is also a practical aspect to this punishment scheme. By allowing a home-rule city to continue to set punishment of an ordinance as a Class C misdemeanor, a city could control the prosecution policy for such violations because the city controls the person authorized to prosecute such violations – the city attorney. Likewise, when the county establishes an ordinance, the violation of which is a Class A misdemeanor, the prosecution is controlled by a state officer – either the county attorney or district attorney with authority to prosecute misdemeanor offenses. If all violations were Class A misdemeanors, a city would lose control of the prosecution and be forced to rely upon the prosecution policies set by the state officer. This would diminish a home-rule city's inherent authority, which the Legislature clearly did not intend to do.

to pass the ordinance in question and set the penalty as a Class C misdemeanor.  Given the City's

authority, the municipal court had jurisdiction in this matter.  It was error for that court to grant

appellees' plea to the jurisdiction.  Accordingly, I would sustain the State's issue, reverse the

judgment of the county court at law, and remand this matter to the municipal court for further

proceedings.

Steven C. Hilbig, Justice

Publish