**Opinion issued September 22, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00578-CV

———————————

## JIM P. BENGE, M.D. AND KELSEY-SEYBOLD MEDICAL GROUP PLLC, Appellants

### V.

## LAUREN WILLIAMS, Appellee

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 1052657**

---

### SUPPLEMENTAL OPINION
### ON MOTION FOR EN BANC RECONSIDERATION

We limit our discussion to two issues raised in the opinions dissenting from

the denial of en banc reconsideration: (1) whether Williams offered evidence on

the lack of disclosure only to challenge Dr. Benge's credibility and (2) the nature of the jury-charge error for which we found presumed harm.

I.

The dissent accepts Williams's contention that she raised the issue of lack of disclosure not for an invalid purpose (to obtain a finding that Dr. Benge violated the standard of care by failing to disclose) but for a valid one (to explain to the jury that it could, based on Dr. Benge's "deceit" of not telling Williams about Dr. Giacobbe's inexperience, draw a conclusion that Dr. Benge was untruthful when he testified at trial that the injury was caused by an electrical arc instead of medical negligence). This explanation is belied by the evidence and the closing arguments.

For example, in final argument, Williams did not argue that Dr. Benge's alleged deceit was relevant either to his credibility or to whether some other action he took or failed to take during or after the surgery violated the standard of care. Instead, the jury was told that the "deceit" itself violated the standard of care. Similarly, Williams's medical expert testified that Dr. Benge violated the standard of care by not telling Williams that Dr. Giacobbe would participate in the surgery.

After criticizing defense expert Dr. Toy's testimony that a physician does not have to "inform the patient [that] the resident will be performing the surgery," Williams told the jury, "[I]f that's what you want the standard to be, . . . [g]o back and find for them." After talking further about the lack of disclosure,

2

Williams argued, "[I]f you approve that standard today, that will become the standard. You disprove the standard today, you send them a message, the standard changes."

The last words to the jury asked it to establish a standard of care that requires surgeons to disclose resident participation:

> You know, we're trying to get you to enforce the safety rules here. . . . If you don't think they're important, put zero . . . . Can you imagine what will happen, though, if you do? . . . They're going to go back [to] doing the same thing they've been doing: not telling people about who's doing the operation.

That is not a credibility argument; it is an argument about negligence and, specifically, negligence due to lack of disclosure.

## II.

The error in the jury charge was not simply the denial of Dr. Benge's proposed instruction, which, if given, could have appropriately confined the jury to consideration of only valid legal theories. It was also the submission, over Dr. Benge's objection, of a single broad-form jury question that mixed a valid and invalid theory, without any attempt to segregate them.

In *Casteel* and *Hawley*, charge error prevented the Court from determining whether the jury found liability on an invalid theory or basis. First, in *Casteel*, a single broad-form liability question mixed valid and invalid theories, and harm was presumed. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389–90 (Tex. 2000);

3

*Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 227 (Tex. 2005). Then, in *Hawley*, the trial court improperly denied a requested instruction. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 863–64 (Tex. 2009). The Court noted that this was a different type of error and that, historically, jury-instruction error would not result in a court applying a presumed-harm analysis. *Id.* at 864. But the Court concluded that the presumed-harm test of Rule 61.1(b) nevertheless applied because the error precluded the reviewing court "from determining whether the jury found liability on an invalid basis." *Id.* at 865. The presumed-harm rule applied because the error "prevent[ed] proper presentation of the case on appeal." *Id.*; *see* TEX. R. APP. P. 44.1(a)(2).

That same result has occurred here. Williams signed a patient-disclosure document authorizing her surgeon to be assisted in the surgery. Texas law does not recognize a duty on a supervising doctor to disclose a resident's participation beyond that disclosure. But Williams's expert testified that Dr. Benge violated the standard of care by failing to disclose that the resident would participate in the surgery. The jury was then asked, generally, whether Dr. Benge did what an ordinarily prudent surgeon would have done. In this framework, it is impossible to determine whether the act or omission that the jury found to have fallen below the standard of care was a permissible one, like surgical error or supervisory neglect, or an impermissible one, the much-discussed failure to disclose resident

4

participation. Accordingly, harm is presumed.[1] *See Hawley*, 284 S.W.3d at 865; TEX. R. APP. P. 44.1(a)(2).

There were easy solutions to this error, including narrowing the question to inquire about negligence during or after the surgery or instructing that a failure to disclose could not form the basis for a finding of negligence.[2] Either would have prevented the error.

* * *

Juries are given the important task of absorbing and sifting through the evidence, weighing the credibility of witnesses, and applying the law as instructed to them to answer jury questions. We should trust them to perform this task by submitting proper jury questions and instructions. Nudging them with a jury question that mixes an invalid legal theory with a valid one demonstrates a distrust of their ability to correctly assess liability on the valid theory. Because the jury was given a jury question that failed to comply with the law, over Dr. Benge's objection, this case must be returned to the trial court.

---

[1] Even under the harmless-error test, Dr. Benge has established the requisite harm for reversal based on the repeated references throughout the trial to a violation of the standard of care by failing to disclose the resident's participation.

[2] Thus, the trial court would not have been required to submit granulated liability questions, contrary to the preference for broad-form questions established in Rule 277. *See* TEX. R. CIV. P. 277.

5

Harvey Brown
Justice

Panel consisted of Justices Keyes, Bland, and Brown.

En banc reconsideration was requested. TEX. R. APP. P. 49.7.

A majority of the justices of the Court voted to overrule the motion for en banc reconsideration.

The en banc court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Huddle, and Lloyd.

Justice Brown, writing a supplemental opinion on motion for en banc reconsideration, joined by Justice Bland.

Justices Jennings, dissenting to the denial of en banc reconsideration with a separate opinion, joined by Justices Keyes and Higley.

Justice Keyes, dissenting to the denial of en banc reconsideration with a separate opinion.

Justice Lloyd, dissenting to the denial of en banc reconsideration with a separate opinion, joined by Justices Keyes and Higley.