# Supreme Court of Texas

No. 21-0769

Angela Horton and Kevin Houser,

*Petitioners*,

v.

The Kansas City Southern Railway Company,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE YOUNG, joined by Justice Blacklock, dissenting.

Justice Abbott clearly described respect for the jury-trial right as the principle underlying the decision he announced for the Court in *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000). "It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law." *Id.* at 388. When "it is impossible for us to conclude that the jury's answer was not based on one of the improperly submitted theories," *id.* at 389, therefore, a new trial is required because only a new trial can ensure that the *jury*, rather than judges substituting themselves *for* the jury, resolves the parties' dispute. On rehearing in this otherwise routine case, the Court retreats from this

principle. Apparently in a misguided sense that things will be easier or more efficient in cases with an erroneous broad-form submission, the Court exchanges clear rules for a case-by-case gut-check after appellate justices review "the entire record."

I am all for reconsidering our decisions. A humble Court should acknowledge error—*if* it has erred. But the error comes today, not last term. We were then unanimous in agreeing that this case required a new trial under the principles of *Casteel*. The reason was that, over objection, the trial court submitted the case to the jury in a way that prevents anyone else from knowing which theory of negligence the verdict turned on—specifically, whether it depended on one we found (and still unanimously find) legally insufficient. Our original holding was a straightforward application of Texas Rule of Appellate Procedure 61.1(b) and the *Casteel* line of cases. Put simply, because it was denied the opportunity to show the appellate court the ground on which the jury rested, Kansas City Southern by definition cannot properly present its case on appeal. The Court's original Part IV (which I attach as an appendix so that it is not lost to the mists of time) followed settled law, which respects the jury and the jury-trial right. Only a new trial can ensure that a final judgment is compelled by a jury's finding rather than imposed *despite* a jury's finding. The Court today, however, reverses course with its new Part IV. We can only hope—we cannot know—that the jury did not rely on the legally insufficient missing-yield-sign theory.

In the new Part IV, the Court's principal error is to revise *Casteel* into something it never was. *Casteel* always required applying Rule 61.1(b)—under which error *is harmful*, not just *presumptively* harmful—

2

when objected-to charge error makes it impossible for the appellate courts to know what the jury actually decided. To dilute *Casteel*, the Court latches onto the casual use of the English word "presumption" in a few of *Casteel*'s progeny and now proclaims that *Casteel* no longer stands for. The Court compounds this misstep by saying that an error is not even "presumptively" harmful if the comingling error includes a theory where the evidence was legally insufficient (*i.e.*, as opposed to a theory that for some *other* legal reason was invalid).

This distinction is immaterial and contrary to our cases. It makes no sense, either, because what threatens the jury-trial right is a judgment that relies on something a jury did not find. Whatever label one gives that "something" is of no importance. What matters is not the *reason* for the invalidity but the risk that the jury relied on a theory (*any* theory) that is legally invalid. The cause of the legal invalidity is immaterial because the result is obviously the same: a jury cannot rely on it. Comingling *any* legally invalid theory within a broad-form question means that we cannot know if the jury did or did not rely on it.

As applied here, Horton exhorted the jury to rely on the missing-yield-sign theory. Horton *still*, as a ground for rehearing, argues that the missing-yield-sign theory is enough to reinstate the verdict. Horton's playing up the missing-yield-sign theory is rather inconvenient for the Court, which rules for Horton by doing the exact opposite—it busily downplays the missing-yield-sign theory and assures everyone that the jury was "unlikely" to have been motivated by the hours of testimony and the video that pushed so hard on that theory. The whole endeavor is contrary to the oft-intoned statement that judges must *never, ever, ever*

3

put themselves in the place of the jury. We should instead keep *Casteel*'s promise of letting the jury speak for itself.

Both the cause and the likely effect of today's decision is not taking the jury-trial right all that seriously. Today's decision would be impossible if there were a greater commitment to ensuring that the judgments of our courts rely exclusively on what a jury actually finds. The consequence of today's decision will diminish confidence that Texas civil judgments are the mandate of a jury and not the guess of a court. Compelling one citizen to transfer money to another should only happen when the court *knows* that the ground on which the jury ruled was lawful.

The Court thinks it is making things better. I know that my colleagues are motivated by that desire. There is no getting past today's error of law, but I genuinely hope that, *in practice*, it all works out better than I fear. In particular, I do not want to diminish the Court's seriousness of purpose with respect to its emphatic reminders to the lower courts that they should *not* erroneously submit charges like this one. But, the Court continues, if it happens anyway, the harm analysis—with or *without* a "presumption" of harm—is no mere show. If the lower courts do not respect that warning, I believe that this Court will respond. In the meantime, however, by stepping back from *Casteel*'s promise, the Court injects more uncertainty into the law and trial practice and disincentivizes the kind of clarity that litigants deserve and that our law demands.

Except as to Parts IV and V, therefore, I continue to join the Court's opinion. Because Part IV's errors lead the Court to an improper outcome, I must respectfully dissent from the Court's judgment.

4

**I**

    *Casteel* explained that "when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court *cannot determine* whether the jury based its verdict on an improperly submitted invalid theory." *Casteel*, 22 S.W.3d at 388 (emphasis added). We applied this principle in subsequent cases, making clear that the key determinant to whether *Casteel* applies is the appellate court's *ability to determine* whether the jury based its verdict on something that is a legally impermissible basis for a verdict. The Court now speaks of that decision's progeny as creating just a "rebuttable presumption" of harm—essentially just like any mine-run error in a trial. And as to whether the presumption is "rebutted"—or, if the presumption was not triggered but the submission was nonetheless erroneous—the Court focuses on the likelihood that an erroneous broad-form submission has caused a particular kind of harm (specifically, how likely it was that the verdict was actually based on an impermissible ground).

    *Casteel* has been reduced to asking whether this "presumption" of harm "applies" or not. But I acknowledge that the Court understands this to have weighty consequences. Once the presumption is determined to apply, a new trial is mandatory unless the party who prevailed at trial can point to the record to show that the error *does not* prevent the appellant from adequately presenting the appeal. *Ante* at 47. The Court does not diminish how tall a task that is. The prevailing party at trial, in other words, must show how the record as a whole does not merely make it *arguable* that the jury did not reach its decision on an impermissible

5

ground, or even more likely than not that it relied on only proper grounds—that party must show, based on the record, that the court can be "reasonably certain" that the jury did not rely on improper grounds. *Ante* at 42, 47. The parties can push back with dueling references to the record.

Appellate courts, moreover, must take their duty seriously when determining whether the presumption has been rebutted. *See id*. Moreover, even when the error does not lead to "presumptive harm"—as the Court concludes that the error here does not—a similar analysis is required. The appellant does not start off with the same sort of presumed harm, but because the reviewing court must still be "reasonably certain" that the error does not prevent the appellant from presenting its case under Rule 61.1(b), *see id*. at 56, the parties' diligent efforts to show whether the record can make the court confident that the jury only relied on proper grounds remains essential to the appellate courts' work.

So although I think that these standards are not what the law requires—*Casteel* has always required more—I do not suggest that the Court has left this area of the law utterly unprotected, either. My dispute with the Court concerns why we are watering down the law and why the new standards are neither grounded in our precedent nor an improvement in practice, as I discuss below.

**A**

Despite its desire to make things better, and an effort to give the presumption real weight, the Court's interpretation of *Casteel* and its progeny is erroneous. The Court at least acknowledges (although it relegates the history to a footnote) that *Casteel* did not think of itself as

6

creating a "presumption." *See ante* at 44 n.29. Rather, it recognized the occurrence of a particular *type* of harm—a petitioner's inability to present its case to the appellate courts.

In *Casteel*, the court of appeals had concluded that submitting multiple theories in broad form was *harmless*—that it could not be shown that the jury likely relied on the unlawful theories.[1] But this Court recognized that the erroneous broad-form submission *is itself* what made it impossible to determine whether the jury rendered an improper judgment—that is, one predicated on a legally invalid theory. The best any court could do, as here, was to assume that the jury based its decision only on valid theories (subject, I suppose, to the ordinary "harmful error" analysis). Such an approach would be easy and efficient, but wrong. We therefore said that "[t]o hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant should be held liable on proper, legal grounds." *Casteel*, 22 S.W.3d at 388.

*Casteel* thus relied on Rule 61.1 to "hold that when a trial court submits a single broad-form liability question incorporating multiple theories of liability, *the error is harmful* and a new trial is required when the appellate court *cannot determine* whether the jury based its verdict

---

[1] Texas Rule of Appellate Procedure 81(b)(1) had already been repealed and replaced by Rule 61.1, but it governed the case and, at that time, read as follows: "No judgment shall be reversed on appeal and a new trial ordered [because of error] . . . unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment . . . ." Our current rules, of course, make even more expressly clear that an error that prevents "properly presenting the case to the appellate courts" is a basis for reversal. Tex. R. App. P. 61.1(b).

7

on an improperly submitted invalid theory." *Id.* (emphasis added) (citing Tex. R. App. P. 61.1). That is, this kind of error is not *presumed* harmful. It just *is* harmful. *Casteel* was a straightforward application of Rule 61.1.

This view of *Casteel* animated our conclusion in *Harris County v. Smith*, 96 S.W.3d 230 (Tex. 2002). There we held that the trial court had "erred in overruling Harris County's timely and specific objection to the charge, which mixed valid and invalid elements of damages in a single broad-form submission, *and that such error was harmful because it prevented the appellate court from determining 'whether the jury based its verdict on an improperly submitted invalid' element of damage.*" *Id.* at 234 (emphasis added) (quoting *Casteel*, 22 S.W.3d at 388). We noted that the Rules provide for "*two* conditions upon which a judgment may be reversed for an error of law." *Id.* (emphasis added) (citing Tex. R. App. P. 61.1). Those are (1) errors which "probably caused the rendition of an improper judgment" or (2) errors which "probably prevented the petitioner from properly presenting the case to the appellate courts." Tex. R. App. P. 61.1.

The *Harris County* dissent—much of which has been converted into law today, giving me high hopes for the future of *this* dissent— incorrectly focused on the first condition. It suggested that the Court must have presumed harm to reverse. 96 S.W.3d at 235 (citing 96 S.W.3d at 237 (O'Neill, J., dissenting) ("[T]he Court *presumes* reversible harm. To do so the Court must assume, contrary to longstanding precedent, that the jury failed to follow the trial court's instructions." (citation omitted)).

But the dissent was mistaken. The Court did not need to *presume* harm—it *found* harm. The trial court's charge error caused *actual* harm

8

because it prevented Harris County from properly presenting its case to the appellate courts.  Whether there was *additional* harm—that is, the distinct harm that would have befallen the defendant if the jury *in fact* had based its verdict on something it lawfully could not do—was thus beside the point.  And that is why Rule 61.1 today has *two* parts—Rule 61.1(a) focuses on improper judgments, while Rule 61.1(b) focuses on the inability of the appellate courts to review those judgments.  If the Court today has not quite conflated them into a single vague rule, it has all but done so.

Today's decision is our first to turn *Casteel*'s straightforward application of the rules into a special, limited-application presumption. "We first suggested that *Casteel* creates a *presumption* in *Cortez ex rel. Est. of Puentes v. HCCI-San Antonio, Inc.*, 159 S.W.3d 87, 91 (Tex. 2005)."  *Ante* at 44 n.29 (emphasis added).  The Court cites each of our "*Casteel* cases" that has used the English word "presumption."  But the use in those cases suggests little more than loose language.  For example, *Cortez* was simply an application of *Casteel*'s conclusion that when the Court cannot determine the basis for the jury's verdict, the charge error *is* harmful:

> *No one except the jurors themselves knows exactly what transpires in the jury room; we know only the verdict.*  We held in *Crown Life Insurance Company v. Casteel* that when a jury bases its finding on an instruction that "commingles invalid theories of liability with valid theories," we do not hold the error harmless because the most that a reviewing court can say is that the verdict might have been reached on a valid theory.  22 S.W.3d 378, 388 (Tex. 2000).  Here, we do not know why veniremember 7 was objectionable.  But as in *Casteel, we cannot know for*

9

> *certain that his inclusion did not affect the verdict,* so we
> presume harm.

*Cortez,* 159 S.W.3d at 91 (emphasis added). Adequate presentation of the appeal was *impossible* because we could not determine the impact of the trial court's error. So the error *was harmful*—not presumptively so. No amount of reviewing the entire record could cure it, and nobody suggested such a thing. Indeed, the fact that the above-quoted statement *ended* our analysis shows that we were not presuming but concluding that there was harm.

As with *Casteel,* the foregoing analysis was a straightforward application of now-Rule 61.1(b). Other cases to which the Court points in support of the new approach refer to a "presumption," but likewise without any suggestion that this was consequential in any particular way—the *label* did no work at all.

**B**

The best that can be said for the "presumption" is what *Casteel* itself said: "when *questions are submitted* in a manner that allows the appellate court to determine that the jury's verdict was actually based on a valid liability theory, the [broad-form submission] error *may be harmless.*" 22 S.W.3d at 389 (emphasis added). The examples that followed this statement show how the "questions" could dispel harmfulness: "answers to *other* questions" might reveal that the jury did not credit an impermissible theory, for example, or there might be "independent grounds" for a verdict, so the broad-form error was obviously not harmful. *Id.* (emphasis added; citations and quotation marks omitted). Similarly, an instruction to jurors *not* to rely on an improper ground could prevent any confusion about whether they did,

10

as this Court explained in *Benge v. Williams*, 548 S.W.3d 466, 476 (Tex. 2018), and as the Court today properly confirms, *see ante* at 43 n.28, 50. So obviously a broad-form "error" was not necessarily a kill shot if something else in the verdict eliminates what otherwise would be a Rule 61.1(b) problem.

Not in a single case until today, however, have we ever suggested that judicial speculation would play the role that other questions or instructions in the verdict form could play—the whole point of Rule 61.1(b) is to *avoid* such speculation. Thus, in some cases that use the word "presumption," like *Thota v. Young*, 366 S.W.3d 678 (Tex. 2012), we rejected the "presumption" because we could determine the basis for the jury's verdict. The charge in *Thota* did exactly what Kansas City Southern requested here—it included a second answer blank. *Id.* at 691–92. We therefore concluded that "*Casteel*'s presumed harm analysis does not apply because *the separate answer blanks allow us to determine* whether the jury found Dr. Thota negligent." *Id.* at 691 (emphasis added).

From the Court's mistaken historiography, it declares that when the *Casteel* "presumption" applies, it is rebuttable. Notably, not even one of the cases that it has mined for the word "presumption" uses the word "rebut" or "rebuttable." Today, the Court cautions, rebutting the presumption of harm requires the court to be "reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it." *Ante* at 47 (quoting *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 227–28 (2005)). At least in this sense, *Casteel* as reimagined is not nothing. If the presumption applies, then the burden on the party who won at trial is serious: that party must displace that presumption by

11

establishing how the record as a whole proves that the jury ruled only on permissible grounds so that the reviewing court can reach that conclusion with "reasonable certainty." This exercise does not offer the clarity that *Casteel* and its progeny demanded, but in practice, I assume that it will be next to impossible to dislodge the presumption of harm in circumstances where the Court today says that the presumption applies.

## C

It would be better, though, to just stick with *Casteel* rather than to rebuild it into something much less. So in addition to describing why the Court is wrong to latch on to the occasional word "presumption"—because we have never *treated* it as one—I describe how I think that word came into our *Casteel* lexicon. As I do so, I will also describe why it is a mistake to say that *some* broad-form errors implicate the new "presumption" while *other* broad-form errors do not (those in which a jury may have heard hours of what it thought was "evidence" but that *we* conclude is legally insufficient). *Any* theory that would lead to rendition of judgment in a single-issue case is a theory that, if comingled with a valid theory, ought to "presume" harm (if that must be our new theory).

Based on the Court's telling, this "rebuttable presumption" innovation stems, at least in part, from a misreading of *Romero*, 166 S.W.3d 212. *See ante* at 47. In *Romero*, the Court rightly concluded that "[e]ven if the jury *could* still have made the same apportionment of fault, the error in the [jury] question is nevertheless reversible because it effectively prevents Columbia from complaining on appeal that they *would not* have done so." *Romero*, 166 S.W.3d at 226. The Court noted that the error is reversible "*unless* the appellate court is 'reasonably

12

certain that the jury was not significantly influenced by issues erroneously submitted to it.'" *Id.* at 227–28 (emphasis added) (quoting *Braun v. Flynt*, 731 F.2d 1205, 1206 (5th Cir. 1984)). That strikes me as correct. But it does not set up the rebuttable presumption that the court establishes today. Rather, if the Court can tell from its review of the record whether the error had any impact on the jury's decision, then Rule 61.1(a) applies, and Rule 61.1(b) does not. But if there is an error, as there is here in submitting the missing-yield-sign theory to the jury, and the record and the charge are unclear about the impact, then Rule 61.1(b) applies and the error is reversible.

The Court, despite its aims, does not "clarify" the law today. Having turned *Casteel* into a rebuttable presumption, the Court refuses to extend that presumption to charge errors that are based on legal insufficiency of the evidence. *See ante* at 54. But the resulting harm is *exactly the same*—the inability to know whether the jury grounded its verdict on something that the law forbids. The Court draws this artificial line to harmonize the reasoning of an inapposite and hastily explained per curiam opinion. *See id.* at 52–53 (discussing *Ford Motor Co. v. Castillo*, 444 S.W.3d 616 (Tex. 2014)). In truth, the Court jettisons what came before *Castillo* and after *Castillo*. Now *those* cases are aberrations—and all to elevate what the Court mistakenly regards as *Castillo*'s approach.

*Castillo* devoted *one whole paragraph* to the question of whether *Casteel* applied—and held that it did *not* apply because there were no improperly commingled theories. 444 S.W.3d at 621. The case was about the sufficiency of evidence supporting an allegation of egregious juror

misconduct that threatened the integrity of judicial proceedings, not about jury instructions on alternative theories of liability. *See id.* at 618. Unsurprisingly, the briefing in *Castillo* spent little time on *Casteel*. The discussion was confined to a few pages of the response brief. The Court rejected the *Casteel* challenge because there was no submission error in the first place. In this case, there is no evidence of the missing-yield-sign theory, but in *Castillo*, there *was* evidence for everything necessary for the verdict. *See id.* at 621. Nothing more was meant or needed. *Castillo* hardly purported to upend all the many statements that the Court today acknowledges—in pre-*Castillo* cases like *Romero* and in post-*Castillo* cases like *Benge*—that *expressly* treat legal insufficiency as materially indistinguishable, for *Casteel* purposes, from any other legal defect. *Ante* at 50–51 & n.34. Treating *Castillo* as the One True Holding is both ahistorical and wrong. *Castillo* did not say it was overruling existing cases, it did not *need* to overrule existing cases, and it *could not* prospectively overrule future cases.

*Casteel* was a bit player in *Castillo*—yet the Court today would treat *Castillo* as a key player in our *Casteel* jurisprudence. And based on it, the Court concludes, without any support for the proposition, that for *legal insufficiency*, "harm is far less likely because nothing prevents the jury from reaching a valid and proper finding based on the evidence it heard." *Id.* at 53.

The theory behind the Court's newfound approach is that a jury can simply ignore a theory that is insufficiently supported. Yes, it *could* do so. And maybe it is even "more likely" to avoid error in this context than when the claim is legally foreclosed for other reasons. *Id.* But for

14

purposes of Rule 61.1(b), the distinction is one without a difference. It is perhaps "more likely" that, compared to me, the most recent Olympic gold-medal long-jump champion could leap from one side of the Grand Canyon to the other. So? We both end up at the bottom, with him a few feet closer to the other side. The other side of the canyon is where the substantive review of a verdict begins—when we *know* what the verdict was based upon. When the jury hears a theory of liability that should not have been submitted—whether because the theory is a *legal claim* that is invalid or because it is a theory that has no *legally sufficient evidence*—the appellate court cannot leap to the other side of the canyon. That point is what Rule 61.1(b) memorializes. Whether one of them gets us a tad closer to the other side is immaterial.

After all, it is hardly breaking news that juries sometimes render a verdict that is erroneous solely because of the lack of legally sufficient evidence. Human beings are fallible. Lawyers are persuasive. Something that *looks* like evidence may not really be. The jury in this case surely tried its very best to render a proper verdict. But it may have failed. Or maybe it succeeded. We simply cannot know, and that is because Kansas City Southern asked for a separate line to ensure that, if the jury was motivated by the missing-yield-sign theory, we *would* know it. Horton did not agree to that, and the trial court agreed with Horton. The Court now agrees that this ruling was *error*. *Ante* at 39. Kansas City Southern was right all along about the yield sign. Congratulations—and as vindication for being right, now pay up, because the Court *assumes* that the jury relied on the humped-crossing theory. We would *know* that, however, only if the requested extra question had not been erroneously denied.

15

I again emphasize that our lack of knowledge has nothing to do with *what kind* of legal error infected the broad-form submission. A theory bereft of legally sufficient evidence is just as lawless a ground on which to base a verdict as a totally made-up cause of action.

To illustrate the point, Horton prevails on rehearing today because the Court now believes that the jury could not have been hoodwinked by the substantial effort to push the missing-yield-sign theory to the jury. Who, the Court wonders, could be persuaded by something that, to the eighteen eyes of this Court, constitutes no legally sufficient evidence? Surely not *the jury*, the Court opines—which means that the jury instead *must* have believed the humped-crossing theory. The Court makes this assumption even though the missing yield sign was far more than just a stray comment by a lawyer or witness. According to the parties, the simple missing-yield-sign theory was fully 10% of the evidence at trial. That includes Horton's expert witness who testified that the presence of yield signs would more likely than not have made a difference. As the Court acknowledges, the missing yield sign was emphasized in Horton's opening statement. *Ante* at 56. The Court denigrates the opening statement about the missing yield sign (the lawyer *said* that the humped-crossing issue was worse!) and the hours of testimony (*more* testimony was about other things!). *Id.* at 56–57. It does not mention that Horton played a video to emphasize the absence of the yield sign. The Court thinks it significant that the trial court did not expressly *tell* the jury to consider the yield sign, *id.* at 57, but that has nothing to do with whether the jury accepted Horton's repeated invitations to rely on it. The Court claims to be "reasonably certain"

16

that the jury was unmoved by the missing-yield-sign theory, *id.* at 56, which it characterizes as an insignificant sideshow.

Guess who does *not* think it was a big pile of nothing? Horton—who seeks rehearing in this Court on the ground that . . . the missing yield sign *does* provide sufficient evidence. And the court of appeals—three trained lawyers, and our colleagues in the judiciary—who sent the case back for a new trial because they thought that . . . the missing yield sign provided sufficient evidence. Despite all that, today's opinion treats finding out if an actual *juror* was persuaded by the missing-yield-sign theory rather than the humped-crossing theory as pointless. Even if it is plausible that things happened the way the Court now thinks, it is a problematic basis for a judgment for several reasons.

First, whether we think the jury was unlikely to have been motivated by the missing yield sign is simply not the relevant question for *Casteel* and Rule 61.1(b). Instead, that is a question for Rule 61.1(a)—whether the error "probably caused the rendition of an improper judgment." As I have discussed above, the only question for us is whether we can *determine* whether harm occurred. If we cannot, then the charge error is harmful by definition under Rule 61.1(b). That is itself the relevant "harm." The solution, as the rule says, is through reversal—not through a review of the record to guess about whether Rule 61.1(a) harm existed.

Second, the Court's opinion implicitly adopts the U.S. Supreme Court's approach for federal criminal cases expressed in *Griffin v. United States*, 502 U.S. 46 (1991). That case held that, in the criminal context, evidentiary insufficiency regarding an alternative legal theory

17

does not constitute a legal *error* in the same way as other errors that encompass the presumption of harm. The precedent of this Court is to explicitly reject that approach in Texas civil trials, as explained in detail, for example, in both *Harris County*[2] *and Romero*.[3] And we rejected the analogy for good reason, too. Criminal cases involve much greater protections against an erroneous verdict. Jurors must be certain of guilt beyond a reasonable doubt; they cannot vote to convict based on a mere preponderance of the evidence. And a judgment of acquittal is final—no matter what, there will be no new trial.

The language in *Romero* that is now identified as a basis to reimagine our jurisprudence in a more federal way comes from several cases in the federal courts of appeals. Those cases also do not purport to follow the Texas Rules of Appellate Procedure, and I do not think we should feel any obligation to follow them. The cases include *Braun*, 731

---

[2] In *Harris County*, we responded this way:

> Instead of *Casteel*, the dissent urges that we follow the United States Supreme Court's decision in *Griffin v. United States*, 502 U.S. 46 (1991), and hold the charge error in this case to be harmless. . . . *Griffin* did not make any new criminal law, nor did it purport to extend its view of constitutional requirements to civil procedure. The dissent here acknowledges as much, but nevertheless suggests that *Griffin*'s logic should apply equally in state civil procedural questions as in federal constitutional law. But the United States Supreme Court itself has acknowledged that a different reversible error analysis applies in civil cases.

96 S.W.3d at 234 (citations omitted).

[3] In *Romero*, we said: "The argument was made in *Harris County* that even if it is reversible error to include legally invalid claims with legally valid ones in a single jury question, the same rule should not apply when all the claims are valid but some lack support in the evidence. . . . *We specifically rejected this argument* . . . ." 166 S.W.3d at 227 (emphasis added).

18

F.2d 1205, which *Romero* cited once in a footnote, and *E.I. du Pont de Nemours v. Berkley & Co.*, 620 F.2d 1247 (8th Cir. 1980). Those cases pointed to *Collum v. Butler*, 421 F.2d 1257 (7th Cir. 1970), which was not cited in *Romero*, but quite clearly illustrates the Court's problematic line of reasoning.

In *Collum*, the Seventh Circuit concluded that "[t]he dominant issue, as the record shows, involved the injuries suffered by the plaintiff as a result of the alleged beating inflicted upon him by the defendants." 421 F.2d at 1260. Thus, it "would not serve the interest of justice" to allow "other issues which occupied positions of *such relative insignificance* in the trial to be treated now as so important as to make their submission to the jury prejudicial." *Id.* (emphasis added). That is, like the Court today, the Seventh Circuit swept away the error based on its assessment of the relative significance of the issues at the trial it did not attend. But this is based, at least in part, on the *Federal* Rules of *Civil* Procedure. *See* Fed. R. Civ. P. 61 ("Unless *justice requires* otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." (emphasis added)). *Cf., e.g.*, *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 359 (5th Cir. 2021) ("We 'trust the jury to have sorted the factually supported from the [allegedly] unsupported.'" (alteration in original) (quoting *Nester v. Textron, Inc.*, 888 F.3d 151, 160 (5th Cir. 2018))).

But again, we have *expressly rejected* that view. *Romero* could not have implicitly meant what the Court now says it meant, because it *explicitly* said the opposite. 166 S.W.3d at 227. The Court never

19

acknowledges that it is effectively adopting the Supreme Court's approach in *Griffin*. But what the Court *does* is just what the Seventh Circuit did in *Collum*—write off evidence as so "relative[ly] insignifican[t]" that it could not possibly have infected the verdict. I have no problem with such an approach *if* a defendant did not ask for a separate question or an instruction. Such an omission would itself confirm that the supposed evidence was relatively insignificant, and it is too late to complain about it later in hindsight. But when an error is timely identified, as here, precisely *because* of how substantially the legally insufficient theory was presented to the jury, it is wrong to treat the error so casually. Texas may have different rules on harm; perhaps Texas cares more about the integrity of jury verdicts and about other principles, too.[4]

Texas law is different, after all, in other ways. "No evidence" is a *legal* issue, not a factual one. For that reason, this Court reviews legal sufficiency but not factual sufficiency. *See* Tex. Const. art. V, § 6 (the courts of appeals' decisions regarding "all questions of fact brought before them on appeal or error" are "conclusive"); Tex. Gov't Code § 22.225(a) ("A judgment of a court of appeals is conclusive on the facts of the case in all civil cases."). By contrast, the U.S. Supreme Court can review factual sufficiency for clear error, so its approach does not raise any serious

---

[4] The right to a jury trial in Texas is unique among states: "Virtually all state constitutions contain some guarantee of a right to jury trial, but . . . [n]one contain two separate and unrelated provisions comparable to those of the Texas Constitution." George D. Braden et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 421 (1977); *see* Tex. Const. art. I, § 15; *id.* art. V, § 10. The Texas Constitution provides civil litigants a jury right broader than that conferred by its federal counterpart, permitting jury trials for *all* causes—not only those at law, but also in equity.

concerns. If the line between legal- and factual-sufficiency review in Texas courts is rendered indistinct, the result could be unpredictable. Indeed, Horton's motion for rehearing argues that the Court's analysis of the missing-yield-sign theory was an improper reweighing of the facts. Her skeptical gaze is perhaps more appropriately cast on the Court's new opinion.

\* \* \*

Applying *Casteel* here does not and has never undermined Texas Rule of Civil Procedure 277's preference for broad-form submission. As *Casteel* emphasized, "Rule 277 is not absolute; rather, it mandates broad-form submission 'whenever feasible.'" 22 S.W.3d at 390. The rule uses this language because broad-form submission sometimes is *not* feasible. Adding a single question, as in *Romero* or in this case, would have eliminated the problem. Or, as the Court notes, adding a single instruction here—to not consider the yield sign—would have solved the problem too. Such a modest price to ensure that the courts *know* what a jury did. The extra question or extra instruction would hardly be a departure from broad-form practice, much less constitute a significant burden on anyone. But refusing to add a question *or* to instruct the jury to disregard the challenged theory *or* to remand for a new trial when that theory turns out to have been invalid all along is highly prejudicial without any benefit for the rule of law.

## II

The Court's error today is an error regarding how we read precedent and how we apply our technical rules of procedure. That is bad enough. But the error is worse: today's new approach also dishonors the

21

role of Texas juries—the very thing that *Casteel* emphasized as so important. Today's decision drags appellate justices into an independent fact-finding role—assessing how the jury would have apportioned fault based solely on the humped-crossing theory.

It might be different if we could be *sure* that a patient emphatically rejected chemotherapy under any circumstance. And it would surely be different if we could be *sure* that the jury *did not* rely on any unlawful ground. I agree—and so did *Casteel*—that there would then be no harm and thus no need for a new trial if we knew, rather than guessed. *See* 22 S.W.3d at 389. It would disrespect a jury to pretend that we do not know what we *do* know—just as it disrespects a jury to pretend that we know what we cannot possibly. But there is a massive analytical gap between concluding that (1) no legally sufficient evidence supports the missing-yield-sign theory and (2) the jury did not believe and rely on it. A verdict unsupported by evidence cannot lawfully be the basis for a judgment—but that does not empirically mean that a verdict cannot issue without

Today's approach is anything but deferential to a jury. The courts' coercive power to transfer property from one party to another (or to refuse to do so) is justified only if both sides know that the jury *actually* found the facts that warrant that result. "Upholding" a verdict by tethering a result to a theory that the jury itself may well have rejected does *not* respect the jury. A patient under the misimpression that a cancer screen was clear would naturally refuse an offer of chemotherapy. A doctor would hardly show respect to then say, "Well, some patients don't want it even if they know they have cancer, so no point in asking her—she *said* she didn't want it, and she's the boss."

22

legally sufficient evidence. Much experience proves the contrary, which the Court can hardly deny. So the Court identifies various reasons to deem it less likely that the jury relied on the missing yield sign but *not* the humped crossing. Fair enough—but I need not establish that the jury *did* prefer the missing-yield-sign theory to agree with Horton that there was more than enough thrown at the jury to think that it may well have made that choice.

Professional judges disagree about the legal sufficiency of this evidence—the court of appeals concluded that the evidence was not just legally but even *factually* sufficient. Despite this, the Court seems to think the jury must not have relied on the theory. In doing so, it discards our strong tradition of not presuming the grounds on which a jury ruled. Honoring the jury's role requires a new trial. *Casteel* would have sent it back—and so would all our cases until today. We should not have changed course. The new "presumption" should apply to this case—but whether it applies or not, the error was harmful and the Court should remand for a new trial.

\* \* \*

Although there are many unanswered questions about today's new turn, the Court's promise is important: that despite the change in the law, the *results* should not be materially different. I take the Court at its word that the record-based harmful-error review will be rigorous and thorough, and that courts will not give the form while denying the substance of that review. Albeit with less certainty than under *Casteel*, error in a broad-form submission should still generally be recognized as harmful—whether the old or the new version of *Casteel* is followed, and

whether the "presumption" applies or not. Today's mistaken decision is a bad first step on the new journey. But if the courts of appeals wave off submission error, and if the trial courts become more willing to commit such error, parties should alert this Court. If the Court can change the law so quickly on rehearing in today's case, based on its assumption that this new way will be better, it can presumably change again if that assumption is betrayed.

In short, my willingness to hope for the best notwithstanding, I would stick with our well-reasoned decision from last June and remand for a new trial consistent with our holding in *Casteel* and subsequent cases. I must therefore respectfully dissent.

Evan A. Young
Justice

**OPINION FILED:** June 28, 2024

**APPENDIX: THE ORIGINAL PART IV**
## IV.
### Harmful Error

Having concluded that the ICCT Act does not preempt Horton's negligence claim based on the humped crossing, but no evidence supports the negligence claim based on the missing yield sign, we must finally determine whether the trial court's submission of both negligence theories through a single broad-form negligence question constituted harmful error. KC Southern objected to the broad-form question on the ground that it would permit the jury to find negligence on an invalid liability theory, and it offered a proposed charge that included two blanks for the jury to separately determine the parties' negligence liability for the humped crossing and the missing yield sign.

The trial court overruled the objection and refused the proposed question, believing it improperly granulated a single negligence cause of action. The court of appeals—after agreeing with KC Southern that federal law preempts the humped-crossing claim and agreeing with Horton that the evidence supports the yield-sign claim—concluded that the trial court erred by submitting both theories in one question and that the error was harmful under *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000), because the court could not determine whether the jury found negligence on a valid or invalid theory. *See* 666 S.W.3d at 19.

We have also concluded that only one of Horton's two allegations can support the jury's negligence finding, albeit the opposite one. Thus, we too must determine whether submission of the broad-form question

25

over KC Southern's objection resulted in harmful error. KC Southern argues it did because the question "commingle[d] valid and invalid liability theories . . . and a proper reason for the verdict cannot be ascertained from the record." Horton argues it did not because the question properly submitted Horton's single claim for negligence, leaving it to the jury to determine what acts would support that claim. We agree with KC Southern.

We held in *Casteel* that "when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful, and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory." 22 S.W.3d at 388. Horton argues *Casteel* does not apply here, however, because that case involved multiple, distinct "theories of liability," some of which were valid and others of which were not. But here, Horton contends, the court submitted just one liability theory—negligence. According to Horton, *Casteel* does not apply because "[f]ailing to maintain tracks and failing to post a yield sign are different negligent acts, not separate theories of liability." We disagree.

It is true that *Casteel* involved a single broad-form liability question with instructions addressing "thirteen independent grounds for liability," four of which we concluded were invalid. *Id.* at 387. But in holding that the error was harmful because appellate courts could not determine whether the jury based its verdict on an invalid theory, we relied on and reaffirmed our prior decision in *Lancaster v. Fitch*, 246 S.W. 1015 (Tex. 1923), in which "the trial court submitted a single general negligence issue with instructions regarding three distinct

theories of negligence liability." *Casteel*, 22 S.W.3d at 389. *Lancaster* applied the same rule in a case in which the plaintiff "pleaded three separate acts of negligence as the proximate cause of his injury" and the trial court submitted a single negligence question. 246 S.W. at 1015–16. We held that the submission of one invalid negligence theory along with two valid theories, where it was impossible to tell which theory the jury relied on, was harmful error. *Id.* at 1015–17.

We have since applied *Casteel*'s harmful-error rule in cases involving a variety of circumstances that created the same problem for the appellate courts, including the broad-form submission of multiple elements of damages, *Harris County v. Smith*, 96 S.W.3d 230, 231 (Tex. 2002), the inclusion of two theories within a single apportionment-of-responsibility question, *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 215 (Tex. 2005), and a trial court's refusal to submit necessary instructions with a broad-form question, *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 865 (Tex. 2009). Most recently, and most importantly, we specifically rejected Horton's argument in *Benge v. Williams*, 548 S.W.3d 466 (Tex. 2018).

At the trial in *Benge*, the plaintiff "argued and offered evidence that her physician was negligent both in using an inexperienced resident to assist with performing her surgery and in not disclosing the resident's level of involvement." *Id.* at 467–68. But the plaintiff only claimed a right to recover based on the physician's negligent use of the inexperienced resident and did "not claim a right to recover for the nondisclosure." *Id.* at 468. The trial court submitted a broad-form negligence question, after refusing the physician's request

27

for an instruction that the jury should disregard the plaintiff's arguments and evidence regarding the nondisclosure, and the jury found in the plaintiff's favor. *Id.* at 470. We held that the court erred in refusing to submit the requested instruction, and we found that error harmful under *Casteel* because the jury could have found negligence based on the nondisclosure even though the plaintiff "does not assert that claim." *Id.* at 474. We did so even though the question the trial court submitted, "unlike the one in *Casteel*, did not include multiple theories, some valid and some invalid. It inquired about a single theory: negligence." *Id.* at 475.

To the extent Horton contends that the *Casteel* rule applies only when a broad-form question permits a liability finding based on a theory or ground that is legally "invalid" as opposed to, as here, a ground lacking sufficient evidence, our precedent has also rejected that argument. We have applied the rule not only when the question permits a finding based on a legally "invalid" theory, but when it permits an erroneous finding based on a ground the evidence does not support, *Harris County*, 96 S.W.3d at 231; *Romero*, 166 S.W.3d at 227–28, a ground that is "jurisdictionally barred," *Tex. Comm'n on Hum. Rts. v. Morrison*, 381 S.W.3d 533, 535 (Tex. 2012), and, in *Benge*, a claim the plaintiff simply "does not assert," 548 S.W.3d at 474. As we explained in *Hawley*, "[s]ubmission of an invalid theory" simply "involves '[a] trial court's error in instructing a jury to consider erroneous matters.'" 284 S.W.3d at 865 (quoting *Harris County*, 96 S.W.3d at 233).

Horton relies on our opinion in *Dillard v. Texas Electric Cooperative*, where we stated that, under broad-form submission rules,

28

"jurors need not agree on every detail of what occurred so long as they agree on the legally relevant result. Thus, jurors may agree that a defendant failed to follow approved safety practices without deciding each reason that the defendant may have failed to do so." 157 S.W.3d 429, 434 (Tex. 2005) (citing *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 924 (Tex. 1981)). Indeed, we went on to say in *Dillard* that jurors "could have unanimously found [the defendant] negligent, even if half believed the negligent act was overloading his truck and half believed it was failing to warn oncoming traffic—acts that preceded two different collisions." *Id.* We read Horton's reliance on *Dillard* to argue that the trial court's broad-form submission of his two negligence allegations was not error at all, much less harmful under *Casteel*.

But *Dillard* involved a completely different issue: "whether the trial court abused its discretion in refusing to submit one of two different instructions on the defendants' inferential rebuttal defenses." *Id.* at 430. We held that the court sufficiently instructed the jury on those defenses and thus committed no error, and we made the statements on which Horton relies to explain why additional instructions would have been duplicative and unnecessary. *Id.* Our discussion addressed only the defendants' defenses, not the plaintiff's claims, and the statements on which Horton relies presumed that each of the acts supporting a negligence finding were themselves valid and supported by the evidence. Here, by contrast, we have concluded that the evidence does not support one of the acts on which Horton relied for a negligence finding. Jurors finding negligence may not all have to agree on the same valid and

supported grounds to find negligence, but they cannot rely on invalid or unsupported grounds.

Finally, Horton argues that application of the *Casteel* rule in this case would undermine our strong preference for broad-form submissions, as set forth in Texas Rule of Civil Procedure 277. We think this argument goes too far. Although Rule 277 is "intended to simplify jury charges for the benefit of the jury, the parties, and the trial court," it "was certainly never intended to permit, and therefore encourage, more error in a jury charge." *Romero*, 166 S.W.3d at 230. As we explained when addressing this argument in *Romero*, Rule 277 requires that issues be submitted to a jury in broad form "whenever feasible." *Id.* (quoting TEX. R. CIV. P. 277). We adhere to that rule today, but "Rule 277 is not absolute," and "[s]ubmitting alternative liability standards when the governing law is unsettled might very well be a situation where broad-form submission is not feasible." *Casteel*, 22 S.W.3d at 390 (quoting *Westgate, Ltd. v. State*, 843 S.W.2d 448, 455 n.6 (Tex. 1992)).

Our holding does not overhaul the general preference for broad-form submission. Rather, it emphasizes that, despite our rules' preference for broad-form jury questions, "broad-form submission cannot be used to broaden the harmless error rule to deny a party the correct charge to which it would otherwise be entitled." *Romero*, 166 S.W.3d at 230. Where, as here, true doubt exists as to the validity of one underlying theory and the trial court must resolve a close call[20] as to

---

[20] We note that this case does not present an issue of whether KC Southern preserved its objection to the trial court's error. KC Southern objected that there was a *Casteel*-type defect in the form of the negligence

30

whether sufficient evidence supports a separate act of negligence, submitting either separate questions or separate blanks within the same question may be helpful. Separate jury questions are not the only means to avoid a *Casteel* problem. In some cases, rephrasing the question or giving an instruction not to consider theories that are unpled, invalid, or lacking in evidentiary support will be sufficient.[21] And that alternative is preferable to separate questions when it is feasible. Again, we emphasize that this holding does not undermine the general preference for broad-form submission, but rather provides additional guidance as to how courts should approach instances where broad-form submission is not feasible.

Because the trial court submitted Horton's negligence claim as a broad-form question subsuming both his humped-crossing theory and his missing-yield-sign theory, we are unable to discern whether the jury found KC Southern negligent based on the yield-sign theory, which the evidence does not support. Because the question "allows a finding of

---

question because the humped-crossing theory was preempted, and the missing-yield-sign theory was not supported by the evidence. Although this objection was sufficient to make the court aware of its complaint, KC Southern also tendered an alternative charge that separated the theories.

[21] *See, e.g.*, *Benge*, 548 S.W.3d at 474–76 (holding it was error to deny a jury instruction not to consider an unpled negligence theory regarding failure to disclose a resident's level of involvement in surgery); *Morrison*, 381 S.W.3d at 535–36 (holding that it was error to deny a request to rephrase an employment discrimination liability question to specify discriminatory termination rather than a term that encompassed actions that had not been administratively exhausted); *Hawley*, 284 S.W.3d at 863–65 (holding it was error to deny a limiting instruction that the jury should not consider actions of a doctor who was not the hospital's agent in determining hospital liability).

liability based on evidence that cannot support recovery," *Casteel*'s "presumption-of-harm rule must be applied." *Benge*, 548 S.W.3d at 475.